[No. B178385. Second Dist., Div. Six. May 2, 2006.]

ERIC JONKEY, Plaintiff and Appellant, v.
CARIGNAN CONSTRUCTION CO. et al., Defendants and Respondents.

COUNSEL

James B. Kropff for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Keith D. Taylor and Michael W. Connally for Defendants and Respondents.

OPINION

**YEGAN, Acting P. J.**—A construction site can be a dangerous place. There are some people who are keenly aware of this danger—construction workers. Seasoned and mature construction workers who have risen to the top of this industry and who are supervisors, managers, and owners are not only keenly aware of the dangers, they also teach and are responsible for construction safety. They may also suffer financially for injuries occurring at a construction site. This, of course, provides an extra incentive to be safety conscious. Here, it is ironic that Eric Jonkey (appellant), a seasoned and mature construction worker who had risen in the industry to a position of management and ownership, could be injured in the way we shall describe. Of all people at a construction site, appellant was and is chargeable with caring for his own safety. That he was walking near scaffolding which was being disassembled at a construction site looking down absorbed in a cell phone conversation is tantamount to strolling on a battlefield wearing "horse blinders" and earplugs. While we regret that he was injured, he should be grateful that he wasn't killed.

Appellant's foot was badly injured at a construction site when it was hit by a falling plank from a scaffold that was being disassembled by an employee of Enrique A. Cruz Masonry, Inc. (Cruz Masonry). A jury found in favor of Cruz Masonry finding that its negligence did not cause appellants injuries. Appellant contends that the judgment is not supported by substantial evidence and that the trial court erred in awarding costs to Cruz Masonry. We affirm.

*Facts*

Appellant is a part owner of and supervisor for Capital Steel Fabricators, a firm that forms and sells steel for use in construction. Capital Steel provided steel used in the construction of a Thousand Oaks Cadillac dealership. Carignan Construction Co. was the general contractor and Cruz Masonry was the masonry subcontractor on the project.

On the day of the injury, Cruz Masonry employees were disassembling a 28-foot high scaffold. The scaffold blocked the area where Capital Steel was supposed to place a steel column, so appellant's employees had to wait until the scaffold was taken down before beginning their work. Appellant complained to Carignan and was told that the scaffolding would be disassembled that same day. A Capital Steel crane was parked, with its engine running, about eight feet away from the scaffold.

Appellant was meeting with the general contractor about the schedule when he received a call on his cell phone. As he carried on the phone conversation, appellant walked away from the construction trailer, toward the area where the scaffold was being disassembled. He was looking at the ground and did not see that scaffold planks were being dropped to the ground. As he approached the scaffold, Cruz Masonry employees yelled at him at least once, to warn him of the danger. Appellant seemed to pay no attention. A plank fell on his foot causing serious injury. Appellant testified he heard someone yell something a split second before the plank fell, but by then it was too late to avoid the impact.

Cruz Masonry's vice-president Ricardo Cruz testified that its employees have used the same procedure to disassemble scaffolds for more than 20 years and that no one had ever before been hurt during the process. In this method, which is known as "walking the plank off," an employee on the scaffold picks up a plank by one end, slides it to the end of the scaffold and then lowers or drops it to the ground. Another employee, stationed on the ground, warns people away from the area and stacks the planks that are dropped.

When the injury occurred, Manny Robles was up on the scaffold and Ramon Guzman was working on the ground. Witnesses heard Guzman yell at least one warning to appellant before the impact. Some testified that Guzman yelled only once. Others thought he yelled several times. One witness recalled seeing Guzman waive his hands at appellant, in an attempt to get his attention. Appellant did not react to the warnings.

Cruz Masonry's employees and its expert witness testified that "walking the plank off" is a common and safe practice in the construction industry. The defense expert had no criticism of the general contractor's or Cruz Masonry's conduct in disassembling the scaffold. Appellant's expert testified that Cruz Masonry's employees fell below the standard of care because the area was too crowded and because they should not have dropped planks from the scaffold. They should instead have lowered the planks to the ground "chain gang style," or from man to man.

After a nine-day trial, the jury reached its verdict. It found the general contractor, Carignan Construction, was not negligent. It found Cruz Masonry was negligent but that its negligence was not a substantial factor in causing harm to appellant. The general contractor and Cruz Masonry were represented by the same counsel throughout this litigation. Cruz Masonry submitted a cost bill that included costs for both prevailing defendants. Because appellant had rejected a Code of Civil Procedure section 998 settlement offer, the cost bill also included expert witness fees. Appellants' motion to strike the cost bill or tax costs was denied.

## Substantial Evidence

Appellant contends the judgment is not supported by substantial evidence because the jury found that Cruz Masonry was negligent and the undisputed evidence showed that the plank dropped by Cruz Masonry's employee was a substantial factor in causing the injury to appellant's foot. In evaluating this claim, we apply the familiar substantial evidence standard of review: We view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to support the judgment. (E.g., *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630 [85 Cal.Rptr.2d 386].) "Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . . We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. . . ." (*Id.* at p. 631, citations omitted.) This is true "even if the judgment of the trial court is against the weight of the evidence, . . ." so long as it is supported by evidence which is "of ' "ponderable legal significance," ' ' "reasonable in nature, credible, and of solid value . . . ." ' [Citations.]" (*Ibid.*) " ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

Here, the jury was instructed that, to prevail on his negligence claim, appellant had to prove the employees of Carignan Construction and/or Cruz Masonry were negligent and "[t]hat the negligence of each defendant was a substantial factor in causing [appellant's] harm." It was further instructed: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the cause of the harm."

At trial appellant contended Cruz Masonry was negligent for two reasons. First, it unreasonably used the "walking the plank off" method, rather than the man-to-man method to disassemble the scaffold. Second, its warning procedures were inadequate. The jury factually found Cruz Masonry was negligent without specifying the way in which it was negligent. Thus, the record is "silent" on the jury's theory of negligence. The jury further factually found that the negligence was not a substantial factor in causing appellant's injuries.

 Substantial evidence supports the jury's verdict. There was substantial evidence that workers had been disassembling the scaffold for some time before appellant was injured. It was obvious to anyone who looked at the scaffold that it was being disassembled. The disassembly method was common and followed accepted standards in the industry. Substantial evidence also showed that Cruz Masonry employees yelled warnings to appellant as he approached the scaffolding. The construction site was noisy. A Cruz Masonry employee waived his hands at appellant, to warn him away. Appellant was focused on his cell phone conversation and was looking at the ground. He did not react to the warnings.

In our view, appellant is saying that the general finding of negligence in these circumstances required the jury, as a matter of law, to find causation. This ignores the factfinding power of the jury. In all probability the jury decided that defendant was *only* negligent on a failure to warn theory. In this way, the jury's factual findings are not inconsistent and logically follow. On appeal, we are required to draw all inferences in favor of the judgment, ruling, order or verdict. (*Howard v. Owens Corning, supra,* 72 Cal.App.4th at p. 631; *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1140.)

 Appellant's contention is based on a theory not necessarily supported by the verdict: The jury found that the disassembling manner ("walking the plank off") was negligent and, coupled with the law of gravity, was a substantial factor causing appellant's injury. Its finding of no causation is "really" a misplaced finding on the question of appellant's comparative fault. This would logically follow in theory. However, this analysis is at variance with the time-honored rules rearticulated in *Howard v. Owens Corning, supra,* 72 Cal.App.4th at page 631 and *Ketchum v. Moses, supra,* 24 Cal.4th at

page 1140 and cannot be sustained on appeal. Where, as here, there is no special finding on what negligence is found by the jury, the jury's finding is tantamount to a general verdict. As long as a single theory of negligence is lawfully rebutted on a lack of causation theory, it matters not that another theory of negligence is not so rebutted. (See *Bresnahan v. Chrysler Corp.* (1998) 65 Cal.App.4th 1149, 1153–1154 [76 Cal.Rptr.2d 804].)

*Costs*

Cruz Masonry and the general contractor, Carignan Construction, were represented by the same counsel throughout these proceedings. They made a joint offer to compromise pursuant to Code of Civil Procedure section 998. Because defendants both prevailed at trial, they filed a joint memorandum of costs to recover, among other things, their expert witness fees. Appellant contends the trial court erred in denying its motion to strike the cost bill or to tax costs because each defendant should have filed its own memorandum of costs. He further contends the expert witness costs should have been taxed because an award of those costs was discretionary and defendants did not file a separate motion to recover them. Neither argument has merit.

"[A] prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) Defendants shared counsel and split costs. They prevailed at trial. The costs included in their memorandum of costs were "necessarily incurred in this case." The trial court did not abuse its discretion when it awarded the costs. (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545 [3 Cal.Rptr.3d 604].)

*Fennessy v. DeLeuw-Cather Corp.* (1990) 218 Cal.App.3d 1192 [267 Cal.Rptr. 772], relied on by appellant, is not to the contrary. There, a single defendant who prevailed on a motion for summary judgment sought to recover its own costs and all costs incurred by five unsuccessful codefendants. The Court of Appeal rejected that claim, reasoning that the prevailing defendant was entitled to recover only those costs it had actually incurred. The remaining defendants could recover their costs when and if they prevailed. Otherwise, the plaintiff could be subjected to duplicative cost bills, or forced to pay the costs of a nonprevailing defendant. No similar concerns arise in this case. Both defendants prevailed at the conclusion of the jury trial. There is no danger of a duplicative cost award, or of an award to a nonprevailing party. The trial court properly denied the motion to strike the cost bill.

■ Nor did the trial court err in awarding expert witness costs claimed in a cost bill rather than a noticed motion. Code of Civil Procedure section 998 grants the trial court discretion to award expert witness fees to a qualifying prevailing party. The fees may be claimed in a cost bill; there is no rule requiring a noticed motion. (Code Civ. Proc., § 998, subd. (c)(1), (e); *Thompson v. Miller* (2003) 112 Cal.App.4th 327 [4 Cal.Rptr.3d 905]; *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 109–110 [30 Cal.Rptr.2d 486].)

The judgment is affirmed. Costs on appeal to respondents.

Perren, J., concurred. Coffee, J., concurred in the result only.

A petition for a rehearing was denied May 23, 2006, and appellant's petition for review by the Supreme Court was denied July 26, 2006, S144171.