Filed 8/24/15  Leduc v. West Anaheim Medical Center CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| LANANH LEDUC,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>WEST ANAHEIM MEDICAL CENTER,<br><br>    Defendant and Respondent. | G049298<br><br>(Super. Ct. No. 30-2010-00420798)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

        Lananh Leduc, in pro. per., for Plaintiff and Appellant.

        Wilson, Elser, Moskowitz, Edelman & Dicker and Dean A. Rocco for Defendant and Respondent.

## INTRODUCTION

Appellant Lananh Leduc, who is representing herself on appeal, misunderstands the role of an appellate court. Having lost her wrongful termination lawsuit against her employer, respondent West Anaheim Medical Center, after 14 days of trial, she seeks to retry the case here. Most of her appeal expresses her disagreement with the trial court's findings of fact and with the conclusions it drew from the evidence. But because substantial evidence supports the judgment, we must affirm it.

Leduc also appeals from the trial court's refusal to allow her to amend her complaint to conform to proof at trial, to assert a claim for breach of the covenant of good faith and fair dealing. We conclude the trial court ruled correctly, and we affirm the denial of the motion for leave to amend.

## FACTS[1]

Leduc worked for West Anaheim for 22 years, rising to the level of clinical laboratory scientist III. She oversaw certain aspects of the operation of the hospital's blood bank, which had to be staffed around the clock. She routinely received excellent reviews for her work.

In August 2008, West Anaheim instituted a new procedure for employee access to the hospital and for time keeping. Formerly employees entered by swiping a badge; they would now have to use a badge plus a fingerprint scan. All employees were directed to have their fingerprints registered at Human Resources (HR).[2] Three hospital-wide e-mail notices in August, September, and October informed employees of the requirement.

---

[1] As we are required to do, we recite the facts in a manner most favorable to the judgment. (See *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 552.)

[2] It is important to distinguish between *registering* fingerprints, which was performed at HR to create each employee's unique identification algorithm, and *scanning* or *reading* fingerprints, which was done on an independently operating system at each point of entry. As West Anaheim's CFO explained, the system used the employee's fingerprint to create an algorithm, which then assigned a series of numbers to the employee as an identifier. The system did not store the actual fingerprint.

Leduc would not register her fingerprints. She stated she had been the victim of identity theft through her mortgage company, and she professed to be worried about the security of the fingerprint database.[3] She contacted her immediate supervisor and several people in hospital administration to ask questions about the new system, but none of their responses overcame her resistance to the new procedure. After the fingerprint-scan system began operating, Leduc's supervisor had to have her time logged into the payroll system manually.

Finally, the hospital's administration lost patience with her. She was the only employee who had refused to register her fingerprints with HR. She was given until December 18, 2008, to comply. She did not. Hospital administrators first planned to terminate her that day but changed their minds and decided to give her one more day to comply. The HR director met with her on the afternoon of December 18, and a letter was hand delivered to her on December 19, both informing her that she had to register her prints by her next scheduled shift, which was on December 20. Otherwise the hospital would consider her refusal a voluntary resignation. Leduc came to the hospital on December 19, which was her day off. She spoke with the head of HR, who once again urged her to comply or face termination, but she did not register her prints. She was therefore considered terminated as of the end of the day on December 19. The administrators who made the decision to terminate Leduc's employment were West Anaheim's CEO, its HR director, and its CFO.

In October 2008, Leduc had taken a three-week medical leave of absence after having emergency surgery. She was diagnosed with ovarian cancer. When she returned to work in late October, she did not tell her immediate supervisor that she had cancer or needed chemotherapy.

---

[3] Several employees had to be "bypassed" from the fingerprint registration requirement because the machine would not pick up their fingerprints, even after several attempts. Leduc, however, was the only employee who refused to have her fingerprints registered at all.

3

Although Leduc claimed she told her supervisor on December 12, 2008, that she would need two months off for cancer treatment, the supervisor denied ever receiving such information or such a request for a leave of absence, and the trial court believed the supervisor. The court also found that none of the three administrators who authorized Leduc's termination were aware that she had cancer or had requested a medical leave of absence. They fired her because she refused to register her fingerprints.

Leduc's complaint against West Anaheim stated 13 causes of action.[4] These were: (1) disability discrimination; (2) medical condition discrimination; (3) failure to accommodate; (4) failure to engage in interactive process; (5) violation of California Family Rights Act; (6) California Family Rights Act retaliation; (7) race discrimination; (8) age discrimination; (9) harassment; (10) retaliation; (11) failure to take reasonable steps; (12) wrongful termination; and (13) wrongful termination in violation of public policy. The causes of action for race discrimination, age discrimination, and harassment were dismissed on summary adjudication.

Early in the trial, Leduc moved to amend the complaint to add a cause of action for breach of the covenant of good faith and fair dealing. The court took the motion under submission and denied it on the last day of trial.

After 14 days of trial in November and December 2011, the court issued a 60-page intended statement of decision, which became the final statement of decision. Leduc objected to certain aspects of the intended statement, but the court did not consider the objections because they were filed untimely.

The trial court found in West Anaheim's favor on all causes of action, crediting its witnesses over Leduc when the testimony conflicted and crediting Leduc's deposition testimony when it conflicted with her trial testimony. In particular, the trial

_____

[4] Except where noted, all of the causes of action were pleaded as violations of the Fair Employment and Housing Act (FEHA).

4

court found that Leduc had been fired for refusing to register her fingerprints, and not for any discriminatory reason. Leduc has appealed from the judgment.

Leduc has asked us to take judicial notice on appeal of various documents. Because these documents are either irrelevant or not judicially noticeable, or both, we deny the requests.

## DISCUSSION

Although the trial court found in West Anaheim's favor on all the causes of action still at issue, on appeal Leduc has identified the court's rulings on only three causes of action as erroneous.[5] These are discrimination based on disability, discrimination based on medical condition, and retaliation, all FEHA-based claims. In addition, she has appealed from the court's denial of her motion to amend her complaint to conform to proof to add a cause of action for breach of the covenant of good faith and fair dealing.

We do not write on a blank slate when we review a judgment entered after a full trial. When an appellant challenges the trial court's findings of fact, we ascertain whether substantial evidence supports these findings. "'[T]he power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. . . . [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, superseded by statute on other grounds.) "We view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict in support of the judgment." (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24.)

---

[5] California Rules of Court rule 8.204(a)(1)(B) requires an appellant's brief to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority[.]" Because Leduc's arguments are somewhat convoluted, we have ascertained the issues on appeal from the headings in the argument section of Leduc's brief.

Leduc's opening brief discusses two additional causes of action: failure to follow a Penal Code section regarding taking fingerprints and a violation of Civil Code section 51.7. Neither cause of action was pleaded, and neither was mentioned at trial. We do not consider issues or theories raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 (*Johnson*).)

5

**I.**       **The FEHA Claims**

   **A.**          **Disability discrimination**

   Government Code section 12940, subdivision (a), prohibits an employer from discharging an employee because of a physical disability or medical condition. It also prohibits discharge based on "mental disability," which Government Code section 12926, subdivision (j)(1) defines to include "[h]aving any mental or psychological disorder or condition, such as intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." To prevail on a claim of mental disability discrimination, Leduc must first establish that she suffers from a disability and that she was subjected to an adverse employment action because of the disability. (See *Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236.)

   Although at trial Leduc focused her attention on her cancer diagnosis, on appeal she asserts that this claim is based on a mental disability: "fear of identity theft." The major life activity limited by her fear was her ability to work.

   Mental disability was not pleaded in the complaint, and mental disability never came up in trial as a disorder or condition requiring either accommodation or protection. The sole basis of Leduc's FEHA disability claim at trial was cancer. Accordingly, we do not consider her mental disability for the first time on appeal. (See *Johnson, supra,* 47 Cal.4th at p. 603 [party may not change theory on appeal]; *Yeung v. Soos* (2004) 119 Cal.App.4th 576, 583-584.) In addition, fear of identity theft does not limit the major life activity of working and therefore does not qualify as a mental disability under the Government Code. Leduc presented no evidence that she could not still do her job at the blood bank, even if she was afraid that someone had made off with her personal information. And registering fingerprints is not a "major life activity."

   **B.**          **Medical condition discrimination**

   Government Code section 12940, subdivision (a), prohibits an employer from discharging and employee because of a "medical condition," which section 12926,

subdivision (i), limits to cancer or genetic characteristics. A cause of action for medical condition discrimination requires proof that the employee was subjected to adverse employment action because of the condition. (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.)

The trial court specifically found that none of the people who authorized Leduc's termination had any idea she had been diagnosed with cancer.[6] She was fired because she refused to register her fingerprints. The administrators all testified they knew nothing about Leduc's cancer when they decided to terminate her, and she was fired because of the fingerprint issue. The trial court credited their testimony, and this substantial evidence supports the court's conclusion.

### C. Retaliation

Government Code section 12940, subdivision (h), prohibits discrimination against an employee "because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." A cause of action for retaliation requires a plaintiff to plead and prove "(1) the employee's engagement in a protected activity, i.e., 'oppos[ing] any practices forbidden under this part'; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713.)

Leduc's retaliation cause of action fails on two fronts. First, she never opposed any "practices forbidden" by Government Code section 12940. She never opposed any type of employment discrimination, filed a complaint, testified, or assisted in any FEHA proceeding. Second, she was not fired for opposing any practices, filing a complaint, testifying, or assisting in an FEHA proceeding. The trial court found she was

---

[6] There is one lone sentence in the statement of decision to the contrary, but the repeated statements contradicting it make it clear that's a typographical error.

fired because she refused to register her fingerprints with HR, even though she was given ample opportunity to do so. Because substantial evidence supports this finding, we may not disturb it.

The basic deficiency with all three FEHA causes of action is that Leduc failed to show causation. For each one, she failed to present sufficient evidence of a causal link between protected activity and her termination. The trial court credited the testimony of the West Anaheim witnesses that she was fired for refusing to register her fingerprints, not because they found out she had cancer or because of any other discriminatory reason. In fact, the trial court found that none of the administrators who authorized her termination even knew she had cancer.[7] This finding is based on substantial evidence, and we do not disturb such findings on appeal.

Leduc was an at-will employee. West Anaheim could fire her for any reason, no matter how arbitrary, or for no reason, provided the reason was not unlawful. (See *Shapiro v. Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 475, criticized on other grounds in *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 688.)

Leduc sued West Anaheim for firing her because of a medical condition, which would have been unlawful if it had occurred. But whether it should have given her more chances to register her fingerprints, or should have responded to her worries about database security in writing, or should have treated her with greater kindness is irrelevant. The issue before the trial court was whether West Anaheim fired Leduc because she had cancer, or because she needed a medical leave, or because of any of the other unlawful employment practices set out in Government Code section 12940. The trial court determined it did not. Substantial evidence supports the court's determination. For this court, that is the end of the inquiry.

---

[7] Leduc quarrels with this finding on appeal, asserting that notwithstanding the court's contrary conclusions, her immediate supervisor was involved in the termination process and knew she had cancer. We cannot make factual findings that contradict the findings made by the trial court.

**II.        Leave to Amend**

After three days of trial, Leduc moved the court for leave to amend to state a cause of action for breach of the covenant of good faith and fair dealing. The court denied the motion at the end of trial. The basis for the ruling was that Leduc was an at-will employee who had no contract with West Anaheim that could include such a covenant; there was, therefore, nothing to breach. Moreover, any damages Leduc could have suffered from such a breach were already incorporated into the other causes of action, so an amendment would simply duplicate what was already at issue.

Every contract includes an implied covenant of good faith and fair dealing – a promise that neither party will do anything to frustrate the right of the other to receive the agreement's benefits. This implied covenant protects only the contract's express terms; it does not impose additional duties. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349-350; *Carma Developers* (*Cal.*)*, Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373; *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 806; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 474, 476.)

It is and was undisputed that Leduc was an at-will employee. (See Lab. Code, § 2922.) Although not completely clear, it appears from the record that Leduc sought to impose conditions on West Anaheim based on an employee handbook.[8] She seemed to be claiming that West Anaheim had to follow a four-step procedure – "Grievance Procedure (Conflict Resolution)" – which included written reports and a progression up the administrative hierarchy, before she could be fired.

---

[8]     The motion for leave to amend is not part of the record. Neither is the court's tentative ruling on the motion.

The employee handbook is part of the record. The second paragraph on the first page states, "This Employee handbook is not a contract and the information contained herein is not to be considered contractual promises." The handbook also refers several times to the at-will nature of the employment at West Anaheim.

The court ruled instead that the handbook did not cover this unique situation. Leduc's failure to comply with the fingerprint directive was not a "conflict" or a "condition . . . causing problems on the job," to which the handbook's conflict resolution procedure would apply. The conflict resolution procedure is not tied to employee discipline, which had a separate system of warnings and write-ups. The "Performance Counseling and Corrective Action" portion of the handbook, which sets out the "usual performance counseling procedure," clearly states that an employee may be subject to immediate dismissal if the circumstances warrant and that the counseling procedure does not alter the at-will nature of employment at the hospital.

Even if the provisions of the handbook could be considered to assume contractual force, nothing in the handbook obligates West Anaheim to go through any particular process before firing an employee. It does not condition employee termination on the completion of some procedure. The implied covenant cannot impose duties contrary to those expressly provided (*Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383, 1988), and the handbook makes it clear that an employee can be fired *without* going through the "usual performance counseling procedure." (See *Davis v. Consolidated Freightways* (1994) 29 Cal.App.4th 354, 367 [progressive discipline procedure does not negate at-will employment].)

On appeal, Leduc asserts that the covenant of good faith and fair dealing was breached even if she was an at-will employee, because her December termination made her ineligible for a matching 410(k) contribution for 2008. This was not a subject broached at trial; from the record before us, the concentration appears to be on West Anaheim's failure to follow the grievance procedure.

In any event, Leduc presented no evidence that her termination had anything to do with matching 401(k) contributions.[9] As near we can tell from this record,

---

[9] Leduc's damages expert testified that she was not receiving 401(k) matching contributions in 2008.

she made no such offer of proof when the motion to amend was being considered. We cannot consider for the first time on appeal a theory not tested in the trial court.

## DISPOSITION

The judgment is affirmed. Appellant's request for judicial notice is denied. Respondent is to recover its costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.