Filed 8/26/16  In re A.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B268136 (Los Angeles County Super. Ct. No. NJ28505) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John H. Ing, Judge.  Affirmed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Nathan Guttman, Deputy Attorney General, for Plaintiff and Respondent.

_____

Following a contested adjudication hearing, the juvenile court sustained a Welfare and Institutions Code section 602 petition (the Petition) filed by the Los Angeles County District Attorney alleging that 17-year-old A.M. (Minor) had committed misdemeanor battery (Pen. Code, § 242[1]) against her father (Father). The court placed Minor in the custody of the probation department and ordered a suitable placement, with a maximum period of confinement of six months.

On appeal, Minor contends that reversal is required because the trial court's finding was not supported by substantial evidence. Specifically, she claims that the battery finding cannot stand because she did not deliberately strike Father and that the blow which scratched his upper lip, causing it to bleed, was an accident—she was merely reaching for her cell phone when she inadvertently struck Father. Minor's arguments are not persuasive and, accordingly, we affirm the trial court's finding.

**BACKGROUND**

**I.      The incident**

On June 13, 2015, at approximately 8:15 p.m. Father called the police. When the police arrived, both Minor and Father appeared to be "upset"; in fact, Minor was "extremely emotional, crying hysterically." In addition, Father had a scratch to his upper lip. The police questioned Minor and Father separately on the street outside of Father's home. Minor told one of the police officers that she was a heroin user, that she had used heroin about 36 hours earlier, and that she "becomes emotional when coming down from a high and when withdrawing from heroin." Minor further explained to the officer that earlier in the evening she had used Father's cell phone and when Father got the phone back he attempted to call one of the numbers she had recently called and that made her upset.[2] When she became upset, she attempted to take the phone back from Father and in

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The cell phone at issue belonged to Father, but he had given her permission to use it. Minor was without a cell phone because she had given hers to a taxi driver as payment for a fare.

2

so doing accidentally scratched his face. Father told the other officer that Minor had "swung at his face [while] trying to get the phone."

## II.    The trial

On August 7, 2015, the People filed the Petition. After Minor failed to appear, an arrest warrant was issued on August 13, 2015. On September 4, 2105, Minor appeared and denied the Petition. The matter was tried before the court on October 8 and 13, 2015.

At trial, Father testified that the dispute with Minor on June 13 arose because he was concerned that she was lying about her plans for the evening. While Minor was in the bathroom putting on makeup, Father began scrolling through the cell phone's call log. When Minor saw Father scrolling through the phone, she "came at" him and attempted to take the phone from his hand. When Father turned his back toward Minor in an attempt to keep the phone away from her, she pounded him on the back with a closed fist three or four times and demanded that he return the cell phone. When Father turned back toward Minor, he attempted to keep the phone away from her by extending his right arm out between them—using a "stiff-arm"—and turning his body sideways while holding the phone on the other side of his body in his left hand away from Minor. Minor then made two or three "semi-circular" punching motions toward Father's face, one of which struck him "below the nose and above the right side of [his] lip" with her fist, drawing blood. According to Father, Minor aimed the attempted punches and the punch that struck him at his face, not at the cell phone that he was holding away from his body in his left hand.

Father also testified that the night of June 13 was not the first time he had called the police to his home regarding his daughter; in fact, he had talked to one of the responding officers "multiple times" about Minor.

Minor's trial testimony, for the most part, was largely consistent with the description of the incident that she gave to police outside Father's home on June 13. However, she did provide certain new details regarding the altercation with Father. For example, she disputed hitting Father on the back. In addition, Minor testified that after she accidentally cut Father's lip, Father pushed her across the room so hard that she "flew into the stove" and then, as she was trying to get up, Father allegedly began "beating"

3

her, hitting her twice in the head with a "closed fist." The officer who interviewed Minor at the scene, however, did not testify that Minor had told him that Father had beaten her during their altercation.

Minor also admitted at trial that earlier that same weekend Father had taken her to the police station, where she became so "upset" with Father she broke a door at the police station as she was trying to get away from Father and the police.

On October 13, 2015, the court found the allegations in the Petition to be true beyond a reasonable doubt. On November 5, 2015, the court placed Minor in the custody of the probation department and ordered a suitable placement, with a maximum period of confinement of six months. Minor appealed later that same day.

## DISCUSSION

### I. Standard of review

The same standard—the substantial evidence standard—governs review of the sufficiency of evidence in adult criminal cases and juvenile cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) Under the substantial evidence standard, our review "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support" the judge or jury's factual determinations. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874, italics omitted; *Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1489.) "'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence *this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . .*'" (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24, italics added.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

Reversal under this standard "is unwarranted unless it appears that 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "The trier of fact, not the appellate court,

4

must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." (*In re James B*. (2003) 109 Cal.App.4th 862, 872.)

## II. Substantial evidence supports the adjudication

"A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) "'*Any* harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citation.] 'It has long been established that "the least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.'" (*People v. Shockley* (2013) 58 Cal.4th 400, 404, italics added.) Therefore, "[o]nly a slight unprivileged touching is needed to satisfy the force requirement of a criminal battery." (*People v. Ausbie* (2004) 123 Cal.App.4th 855, 860, fn. 2, disapproved on other grounds in *People v. Santana* (2013) 56 Cal.4th 999, 1011, fn. 6.)

The crime of battery does not require proof that the defendant intended to injure the victim. Battery is a general intent crime. (*People v. Colantuono* (1994) 7 Cal.4th 206, 217; *People v. Lara* (1996) 44 Cal.App.4th 102, 107.) "As with all general intent crimes, 'the required mental state entails only an intent to do the act that causes the harm . . . .' [Citation.] Thus, the crime of battery requires that the defendant actually intend to commit a 'willful and unlawful use of force or violence upon the person of another.' [Citations.] In this context, the term 'willful' means 'simply a purpose or willingness to commit the act . . . .'" (*Lara*, at p. 107.) "[T]he question of intent . . . is determined by the character of the defendant's willful conduct considered in conjunction with its direct and probable consequences [and i]f one commits an act that by its nature will likely result in physical force on another, the particular intention of committing a battery is thereby subsumed." (*Colantuono*, at p. 217.)

In short, to convict a person of misdemeanor battery the following elements must be proved: (1) "[a] person used force or violence upon the person of another"; and

5

(2) "[t]he use was willful."  (CALJIC 16.140.)  "Willfully" means "with a purpose or willingness to commit the act . . . in question."  (CALJIC No. 1.20.)  If an act is done "'with conscious disregard of human life and safety,' the perpetrator must be aware of the nature of the conduct and choose to ignore its potential for injury, i.e., act willfully." (*People v. Colantuono*, *supra*, 7 Cal.4th at p. 220.)  "The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient" to constitute a battery. (CALJIC No. 16.141.)

Here, there was substantial evidence that Minor used force willfully—that is, she intended to perform the act that resulted in Father's undisputed injury.  It was undisputed that Minor became "really upset" when she saw Father using the cell phone he had given her permission to use.  It was further undisputed Minor attempted to get the phone back from Father (and, according to her, succeeded in so doing) through the use of force.

Construing the record in the light most favorable to the judgment, we conclude that the evidence adduced below is sufficient to support the juvenile court's findings and adjudication.  Because there was substantial evidence that Minor had the requisite intent for battery and did fact use force which injured Father, we affirm.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


                                                        JOHNSON, J.


We concur:


            CHANEY, Acting P. J.


            LUI, J.


6