JOHNSON, J.,
Dissenting and Concurring.—With regard to the ostensible agency issue, I respectfully dissent. As to all other issues, I join the majority.
The majority’s discussion of the ostensible agency issue is remarkable less for what it says, than for how it cobbles together its justification for the remarkable conclusion it reaches.
1. The majority misstates the applicable standard of review
In the very last paragraph of its discussion of the ostensible agency issue, the majority comes finally to the applicable standard of review, treating this *1055 critical issue almost as a given. (Maj. opn. ante, at p. 1045.) But the applicable standard of review is not a given, but “the threshold issue” for every appeal. (Clothesrigger, Inc. v. GTE Corp. (1987) 191 Cal.App.3d 605, 611 [236 Cal.Rptr. 605].) The standard of review “is the compass that guides the appellate court to its decision. It defines and limits the course the court follows in arriving at its destination. Deviations from the path, whether it be one most or least traveled, leave writer and reader lost in the wilderness.” (People v. Jackson (2005) 128 Cal.App.4th 1009, 1018 [27 Cal.Rptr.3d 596].) In choosing an incorrect standard of review, the majority has strayed beyond the bounds of its authority and arrived at a necessarily flawed conclusion.
a. De novo is not the correct standard
According to the majority, de novo review is required because “all of the facts essential to the issue of ostensible agency were undisputed” and, as a result, the appeal by Cedars-Sinai Medical Center (Cedars) “ ‘raises purely legal questions.’ ” (Maj. opn. ante, at p. 1045.) The majority bases its conclusion on Mejia v. Community Hospital of San Bernardino (2002) 99 Cal.App.4th 1448 [122 Cal.Rptr.2d 233] (Mejia). I believe that the majority is mistaken and its reliance on Mejia misplaced.
It is not correct that all of the facts essential to a determination of the ostensible agency issue were undisputed. While it was undisputed, for example, that Michael Markow (Markow) signed various conditions of admission and that Markow relied on the Cedars website and the location of Howard Rosner’s (Rosner) office in a Cedars building to conclude that the disclaimer in the conditions of admission did not apply to Rosner, the reasonableness of Markow’s belief in an agency relationship between Rosner and Cedars was hotly contested. Indeed, that very issue loomed as one of the core factual disputes that the jury had to resolve. Moreover, the trial court asked the jury to resolve the reasonableness of Markow’s belief, not on an objective “reasonable person” standard, but on a subjective standard—that is, the jury had to determine whether, given Markow’s own knowledge and experience, his belief was reasonable.[1]
Here, as discussed more below, the jury, by an 11-to-one vote, found that Markow’s belief about Rosner being Cedars’s agent was neither irrational nor unreasonable—but in fact, reasonable. Consequently, the majority’s claim that “all of the facts essential to the issue of ostensible agency were undisputed” *1056 (maj. opn. ante, at p. 1045) appears to be more an artifice to circumvent the required deference to the trier of fact than a realistic assessment of the facts of this case. Moreover, the majority’s reasoning is tautological. The only way that the majority can conclude that the issue of ostensible agency is a question of law subject to de novo review is to prejudge the evidence and determine that it conclusively indicates that the patient should have known that the treating physician was not the hospital’s agent. In other words, the majority has assumed what it wants to prove.
Mejia, supra, 99 Cal.App.4th 1448, on which the majority relies (maj. opn. ante, p. 1045), does not hold that the reasonableness of a patient’s belief about an alleged ostensible agency relationship is always determined as a question of law. Mejia simply held that “[ujnless the evidence conclusively indicates that the patient should have known that the treating physician was not the hospital’s agent, . . . , the issue of ostensible agency must be left to the trier of fact.”[2] (Mejia, at p. 1458, italics added.)
In short, facts are “ ‘undisputed’ ” for purposes of de novo review if they are “ ‘settled’ ” or “ ‘not open to dispute or question.’ ” (Adoption of Arthur M. (2007) 149 Cal.App.4th 704, 717 [57 Cal.Rptr.3d 259].) Here, a critical fact for resolution of the ostensible agency issue—the reasonableness of Markow’s belief in an agency relationship between Rosner and Cedars—was not settled, but disputed, questioned and resolved by the trier of fact in Markow’s favor. Because Cedars’s appeal concerns a disputed issue of fact, it does not raise a pure question of law that would allow the majority to disregard the jury’s factual findings and determine the issue independently. Instead, the ostensible agency issue must be reviewed under a different standard.
b. Substantial evidence is the correct standard
Cedars appeals from the denial of its motion for judgment notwithstanding the verdict (JNOV). ‘“[W]hen reviewing a ruling on a motion for JNOV, ‘an appellate court will use the same standard the trial court uses in ruling on the *1057 motion, by determining whether it appears from the record, viewed most favorably to the party securing the verdict, that any substantial evidence supports the verdict. “ ‘ “If there is any substantial evidence, or reasonable inferences to be drawn therefrom in support of the verdict, the motion should be denied.” ’ ” ’ ” (Pacific Corporate Group Holdings, LLC v. Keck (2014) 232 Cal.App.4th 294, 309 [181 Cal.Rptr.3d 399], italics added.)
Under the substantial evidence standard, our appellate review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the jury’s factual determinations. (Bowers v. Bernards (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925]; Piedra v. Dugan (2004) 123 Cal.App.4th 1483, 1489 [21 Cal.Rptr.3d 36].) “ ‘Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact....’” (Jonkey v. Carignan Construction Co. (2006) 139 Cal.App.4th 20, 24 [42 Cal.Rptr.3d 399], italics added.) “The term ‘substantial evidence’ means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value.” (In re J.K. (2009) 174 Cal.App.4th 1426, 1433 [95 Cal.Rptr.3d 235].)
2. The majority ignores the fact that notice is inherently a fact issue
Although the majority correctly observes that the issue of ostensible agency, at its most elemental level, is an issue about notice (maj. opn. ante, p. 1038), they fail to acknowledge that whether notice is sufficient to inform a party about a fact is not a question of law for this court to decide, but a question of fact for the jury to decide. As our Supreme Court noted long ago, “whether notice was given or not, and if given, whether defendant understood it, and it was sufficient to put him on his guard, or, in the language of the code, to put a prudent man upon inquiry [citation], [are] questions of fact for the jury . . . .” (Renton, Holmes, & Co. v. Monnier (1888) 77 Cal. 449, 456 [19 P. 820].)
3. The majority ignores the decisive nature of the jury’s ostensible agency findings
While the majority acknowledges that the jury ruled in favor of Markow and his wife, Francine Markow (collectively the Markows) on the issue of ostensible agency, they fail to note just how lopsided the votes were against Cedars. This lopsidedness is noteworthy because it demonstrates the jury’s own view that substantial evidence supported its findings. On the issue of ostensible agency, the jury found as follows: (a) Cedars intentionally or *1058 carelessly created the impression that Rosner was its agent (12 to zero); (b) Markow reasonably believed that Rosner was the hospital’s agent (11 to one); and (c) Markow was harmed as a result of his belief that Rosner was the hospital’s agent (10 to two). Unfortunately, the majority has decided that they, not the jury, are better situated to evaluate the credibility of the Markows on such issues as (a) the Markows’ reasons for choosing Rosner and Cedars in 2006 and continuing with Rosner and Cedars up to and beyond the surgery in 2010 and (b) the Markows’ understanding and interpretation of the conditions of admissions as it applied to Rosner and his relationship with Cedars.
By choosing to ignore these touchstone principles and facts, the majority has become a second and self-appointed trier of fact—a role which appellate judges should shun. For example, the majority states that “any inference of agency or employment arising from Rosner’s status as director of the pain clinic was negated by the unambiguous and prominent disclaimer Markow repeatedly initialed.” (Maj. opn. ante, at p. 1044.) This statement begs the question of who decided that the disclosure “negated” Rosner’s status. Not the jury. They sat and listened to all of the evidence and decided in a decisive manner that the disclosures did not negate Rosner’s status. Instead of focusing on facts that support the verdict and then determining whether they are “substantial,” the majority highlights facts supporting the verdict that Cedars sought but the jury decisively rejected.
4. The majority analyzes the conditions of admission form in isolation, not in context
The majority, quite properly, looks at the language of the various conditions of admission forms regarding the independent contractor status of physicians. (Maj. opn. ante, pp. 1039-1040.) But that is both the beginning and the end of the majority’s analysis. The majority decision does not consider what the forms do not say, and, perhaps more critically, what was the trial testimony about these forms.
a. The majority ignores what the forms fail to address
The majority ignores the fact that none of the conditions of admissions says anything about dual status physicians—that is, physicians who not only practice at Cedars, but also run administrative units of the hospital, such as the pain management clinic. Importantly, California courts have held that the director of a hospital’s administrative unit “may be an agent of the hospital.” (Jacoves v. United Merchandising Corp. (1992) 9 Cal.App.4th 88, 104 [11 Cal.Rptr.2d 468] (Jacoves).) In Jacoves, the parents of a young man who had committed suicide sued the hospital; the decedent had received treatment at *1059 the hospital from a staff psychiatrist, who was also the director of the hospital’s adolescent psychiatric unit. (Id. at pp. 99-100.) The hospital won summary judgment based on evidence that the psychiatrist billed for his services separately from the hospital and had no office at the hospital. (Id. at p. 100.) The Court of Appeal reversed, holding that such facts were not dispositive on the issue of ostensible agency: “reasonable inferences may be drawn from the fact that the Hospital designated [the physician] as director of its adolescent psychiatric unit .... It is also reasonable to infer that the Jacoveses based their decision to admit Jonathan to the Hospital at least in part on [the physicianYs position with the Hospital.” (Id. at p. 104, italics added.)
Here, the jury, after hearing all of the evidence, not only found that Markow reasonably believed that Rosner was Cedars’s agent but it did so, not by a narrowly divided vote, but by a nearly unanimous vote of 11 to one.
In addition, courts applying California law have held that, where a conditions of admission form, such as the ones at issue in this case, is arguably ambiguous over who is and is not an independent contractor, the issue of ostensible agency cannot be determined as a matter of law. (Romar v. Fresno Community Hosp. and Medical Center (E.D.Cal., Mar. 21, 2007, No. CIV F 03-6668 AWI SMS) 2007 U.S.Dist. Lexis 25927, *6, *44 (Romar).) In Romar, when her minor daughter fell ill due to a bacterial infection, the minor’s mother sought repeated treatment at a hospital’s emergency room. On each occasion, the mother signed conditions of admission forms that, inter alia, provided that ‘“[a]ll physicians and surgeons ... are independent contractors with the patient and are not employees or agents of the hospital.” (Id. at p. *6.) After the minor suffered permanent injury due to the inability of the hospital’s medical staff to stem the spread of the infection, the minor, through her mother, sued for malpractice. The court granted the treating doctor summary judgment because there was insufficient evidence that he had breached the standard of care. (Id. at p. *47.) With regard to the physician assistants and nurse practioners who treated the minor, the hospital, relying on the conditions of admission form, moved for summary judgment. The court denied the hospital’s motion, reasoning that “there is an ambiguity whether the Conditions Form reasonably informs patients that nurse practitioners and physician assistants are not employees or agents of [the hospital]. Given the language of the notice in the Conditions Form, the Court cannot say as a matter of law that [plaintiffs] knew or should have known that the nurse practitioners and physician assistants were not agents or employees of [the hospital].” (Id. at p. *54.)
As established by Jacoves, supra, 9 Cal.App.4th 88, and Romar, supra, 2007 U.S.Dist. Lexis 25927, Cedars created an issue of fact when it drafted *1060 its conditions of admission forms. By failing to address whether directors of its administrative units are also independent contractors, Cedars allowed this ambiguity to remain in its forms and, in fact, benefited from this ambiguity by permitting the impression that Rosner was one of Cedars’s own doctors. In other words, by its conduct and omissions, Cedars, created an issue of fact for the jury to resolve. This ambiguity is not overcome by the fact that the conditions of admission forms indicated that General Anesthesia Specialists (GASP), Rosner’s actual employer, was one of the subgroups that were independent contractors. There was no testimony at trial by Rosner, the Markows or anyone else that the Markows knew at any time between 2006 and 2010 that Rosner was employed by GASP and only GASP. In other words, the GASP disclosure on the conditions of admission form is of no value to the ostensible agency determination in the absence of evidence that the Markows knew about GASP and that Rosner was employed by GASP and only GASP. Indeed, the testimony at trial was to the contrary—that is, both the Markows and others, including longtime Cedars employees, testified that they believed that Rosner was an employee or agent of Cedars. After listening to this testimony and all of the other evidence presented at trial, the jury found, by an 11-to-one vote, that Markow’s belief about Rosner being an agent of Cedars was reasonable.
b. The majority inexplicably disregards trial testimony about the conditions of admission forms
The majority ignores the testimony at trial about the conditions of admissions. Tellingly, Cedars offered no testimony about its own forms. The only testimony at trial about these forms came from Markow. With regard to the independent contractor disclosure, Markow believed that it did not apply to Rosner because “he was director of pain management for the hospital” and, as a result, he “can’t be an independent contractor.” In other words, Markow thought that because Rosner had an office at Cedars and oversaw a department at Cedars, he was a “full-time employee” of the hospital. Other testimony at trial corroborated the reasonableness of Markow’s interpretation of the forms. At trial, Vera Dae Borce, who had worked at Cedars’s pain center for approximately 14 years, testified that she herself believed that Rosner worked for Cedars and she had never heard of Rosner’s actual employer, GASP. From the jury’s nearly unanimous vote on the issue of the reasonableness of Markow’s interpretation, we know that the jury found such testimony to be not just credible, but compelling.
Two other sets of undisputed facts undeniably bolstered Markow’s credibility on the issue of Rosner’s ostensible agency. First, Rosner held himself out to the public as being affiliated with Cedars, not GASP. For example, although Rosner had been issued with GASP business cards, he did not use *1061 those cards; instead, he gave his patients business cards with Cedars’s name on them. Second, Cedars itself held out Rosner as one of its doctors, not a GASP physician. For example, the Cedars’s website identified Rosner as the medical director of Cedars’s pain center with no mention of or reference to GASP. On Rosner’s business cards from the Hospital, there is no mention of GASP. Moreover, if a patient or potential patient wanted to make an appointment with Rosner, he or she would not call GASP; instead, he or she would dial 1-800-CEDARS-1. In addition, when Rosner sent correspondence to other doctors, he would put the letter on stationery with Cedars’s letterhead—a privilege that Cedars granted to him.[3] Finally, there were no signs in Rosner’s office at Cedars that mentioned or referenced the fact that he worked for GASP. It is clear that the jurors regarded such evidence as credible and persuasive, for they found by a unanimous 12-to-zero vote that Cedars intentionally or carelessly created the impression that Rosner was its agent. It is of no moment that the Markows may not have noted all of these factors; the importance of this evidence is Cedars’s creation of an apparent agency relationship with Rosner.
Van Horn v. Hornbeak (E.D.Cal., Feb. 17, 2010, No. CV F 08-1622 LJO DLB) 2010 U.S.Dist. Lexis 14321, illustrates how written disclosures, such as the conditions of admission, do not establish notice conclusively or as a *1062 matter of law. In that case, the plaintiff, a state prisoner, received obstetrical treatment from a community hospital. Each time she sought services at the hospital, the plaintiff “signed documents ‘Conditions of Admissions’ and ‘Authorization and Consent’ which gave notice that the physicians were not employees of [the hospital].” (Id. at p. *28.) After her baby died one day after a cesarean section birth, plaintiff sued the hospital and two doctors for negligence in connection with the prenatal care that they had provided her. The hospital moved for summary judgment on the ground that its disclosures “foreclosed” the issue of ostensible agency as a matter of law, because those forms stated that the physicians were not the hospital’s agents, but rather independent contractors. (Id. at p. *31.) The Van Horn plaintiff declared that she had “no reason to believe that [the physicians] were not hospital employees, that she believed they were, ‘and was never told otherwise.’ ” (Ibid.) The Van Horn court denied the hospital’s motion for summary judgment, stating that “[i]n the face of these affirmations, the presence of the Conditions of Admission does not establish ‘conclusively’ that plaintiff should have known there was no agency.” (Ibid.) The court explained that, “under California’s lenient standard of ostensible authority, plaintiff made a sufficient showing on the question of ostensible agency to avoid summary judgment.” (Ibid.)
Here, the Markows’ statements of belief regarding Rosner’s status as an agent of Cedars are credible, with arguably more basis than the ones at issue in Van Horn v. Hornbeak, supra, 2010 U.S.Dist. Lexis 14321. The Markows’ belief was rooted in tangible indicators of Rosner’s status as an agent of Cedars, such as the location of his office in a Cedars building, and the description of Rosner on the Cedars website as the medical director of its pain center with no mention whatsoever of Rosner’s actual employer, GASP. As noted above, the Markows’ belief was shared by longtime Cedars employees.
The majority, relying on language in Mejia, supra, 99 Cal.App.4th 1448, concludes that the ostensible agency doctrine is inapplicable to the Markows because once Rosner began treating Markow he became one of Markow’s personal physicians. (Maj. opn. ante, at p. 1041.) Such a contention lacks merit because it is a plausible, but unproven, construct only—that is, it is not rooted in any evidence, just logical inferences. The majority, in other words, ignores the undisputed testimony at trial and instead attempts to generate its own evidence to support its disregard for the jury’s factual findings. For example, the majority stresses that “Cedars did not assign Rosner to treat Markow; Markow chose Rosner.” (Maj. opn. ante, at p. 1041, italics omitted.) While that is partially true (although Cedars did not assign Markow to *1063 Rosner, it recruited Rosner from across the country and made him the director of its pain management program, and in so doing effectively assigned all pain management patients to Rosner), it is only half the story. Markow testified he and his wife chose Rosner, not because of who Rosner was independent of Cedars, but precisely because Rosner was affiliated with Cedars. Specifically, Markow testified that he elected to become one of Rosner’s patients, even though Rosner’s office was 30 to 40 miles away (or an hour to an hour and a half drive one way) from his home, because Rosner was the medical director of a pain center at Cedars, a major medical center that was also a teaching hospital; in other words, Markow went to Rosner because he “worked for the best hospital, one of the best hospitals in the country.” Moreover, there is no testimony—either explicit or implicit—that Markow would have agreed to be seen by Rosner in 2006 if he had not been at Cedars. Nor is there any testimony that Markow would have continued to be seen by Rosner after 2006 if Rosner had left Cedars for another hospital.[4]
The value that the Markows put on Cedars is also captured by Francine Markow’s testimony. She was in favor of her husband being treated by Rosner because Rosner was at Cedars, a place where they would get the “best possible care, the best possible staff, the best possible doctors, equipment, etc.; we always felt that way.” As she explained to the jury, using Cedars was important to her husband because “he always wanted to see someone who was affiliated with a major medical hospital, preferably even a teaching hospital because we have been told years ago that those are the best.” Francine Markow’s faith in Cedars proved almost unshakeable—even as her husband was developing the paralysis that would lead to his quadriplegia, she did not, despite the obvious medical emergency and the possibility of a 90-minute drive, consider going to another, closer hospital.
5. The majority’s position is bereft of legal support
The majority concludes that “the jury’s ostensible agency finding is contrary to law.” (Maj. opn. ante, at p. 1044.) The majority’s conclusion, however, is unsupported by any case law. The majority does not rely upon a single case decided in a nonemergency setting which holds that boilerplate conditions of admission forms “conclusively” establish as a matter of law that an ostensible agency relationship does not exist between a hospital and one of its doctors, let alone when the doctor at issue is also the director of a large *1064 and nationally prominent administrative unit at that same hospital. In fact, the two California cases upon which the majority most directly relies—Mejia, supra, 99 Cal.App.4th 1448; and Whitlow v. Rideout Memorial Hospital (2015) 237 Cal.App.4th 631 [188 Cal.Rptr.3d 246]—were both decided in the context of plaintiff-patients signing disclaimer forms in emergency room settings and both ruled in favor of the plaintiff-patient, not the hospital, on the issue of ostensible agency.
Although Mejia, supra, 99 Cal.App.4th 1448 was decided under different facts than those at issue here, the court explained in significant detail its thought process to insure that California law on the issue of ostensible agency “should be interpreted consistent[] with the national trend.” (Id. at p. 1457.) As Mejia explained, the national trend is squarely in favor of factual findings in favor of an ostensible agency relationship: “ ‘The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [s/c], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of “hospital facilities” expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility.’ ” (Id. at p. 1453.) In view of this modern reality, the Mejia court observed that “the overwhelming majority of jurisdictions employ[] ostensible or apparent agency to impose liability on hospitals for the negligence of independent contractor physicians.” (Ibid.)
Given the absence of any supporting authority, and given that the cases upon which it does rely are contrary to its position, it is the majority who finds itself in a position that is contrary to the law.
6. Conclusion
In sum, our role as a reviewing court in this instance is quite limited. We are to determine merely if the jury’s ostensible agency findings were supported by substantial evidence. Our job is not to ignore or supplant the jury and decide the case as we believe it should have been decided. Yet that is exactly what the majority has done.
To establish ostensible agency liability against Cedars for the alleged malpractice of Rosner, the Markows needed to establish just two things: “(1) *1065 conduct by the hospital that would cause a reasonable person to believe there was an agency relationship and (2) reliance on that apparent agency relationship by the plaintiff.” (Mejia, supra, 99 Cal.App.4th at pp. 1456-1457.)
After hearing 12 days of evidence and argument, and after deliberating over the course of four additional days, the jury found, and decisively so, that there was conduct by Cedars (either intentional or negligent) that created the impression that Rosner was its agent (12 to zero) and that Markow reasonably relied on that apparent agency relationship between Rosner and Cedars (11 to one). Evidence, in the principal form of uncontroverted trial testimony by the Markows, Rosner, and others, supported the jury’s unanimous and near-unanimous findings. Instead of looking to that evidence to see if it was truly substantial (as it is required to do by the applicable standard of review), the majority simply ignores it. Instead, the majority has reweighed the evidence, and has supplanted the jury’s decision about what was credible and what was not, what was important and what was not, and what was clear and what was ambiguous, with its own findings. That decision contradicts the applicable law as well as facts established at trial.
Because a patient is ‘“generally presumed to have looked to the hospital for care,” and because ‘“ostensible agency is readily inferred” (Mejia, supra, 99 Cal.App.4th at pp. 1454-1455, italics added), a hospital’s written disclaimer of agency, such as Cedars’s conditions of admission, simply negates the inference of agency and compels the plaintiff-patient to present facts establishing that he or she had reason not to understand the disclaimer and/or appreciate its significance and/or that the hospital, by other actions or inactions, gave the patient grounds to believe reasonably that the physician was an agent of the hospital. ‘“[T]he mere existence of a boilerplate admissions form is not sufficient to ‘conclusively indicate[] that [the patient] should have known that the treating physician was not the hospital’s agent ....’” (Whitlow v. Rideout Memorial Hospital, supra, 237 Cal.App.4th at p. 640, italics added.) In other words, the existence of a written disclaimer, such as Cedars’s conditions of admission, does not end the factual inquiry into ostensible agency; it begins it.
Here, the Markows did what they needed to do—they presented evidence that Cedars held Rosner out as its agent and that they reasonably believed Rosner was Cedars’s agent—and the jury found that evidence compellingly persuasive. Because substantial evidence supported the jury’s factual determinations on the issue of ostensible agency, the trial court properly denied Cedars’s motions for judgment notwithstanding the verdict and for a new trial.
*1066 I, therefore, respectfully dissent with regard to the ostensible agency issue. In all other respects, I would affirm the judgment.
A petition for a rehearing was denied October 21, 2016. Johnson, J., was of the opinion that the petition should be granted. Appellants’ petition for review by the Supreme Court was denied January 11, 2017, S238388.

 While the jury was asked to determine some issues, such as informed consent, on an objective reasonable person basis—for example, the jury was asked to determine whether a “reasonable person in . . . Markow’s position [would] have refused the pain management procedure”—on the issue of ostensible agency the jury was asked whether Markow, not some objective, reasonable person, reasonably believed that Rosner was Cedars’s agent.

 The holding in Mejia, supra, 99 Cal.App.4th 1448, is consistent with other types of legal disputes where the reasonableness of a plaintiffs belief is at issue. For example, “ ‘the question of whether a [fraud] plaintiffs reliance is reasonable is a question of fact.’ ” (Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601].) “The reasonableness of the plaintiffs reliance is judged by reference to the plaintiff’s knowledge and experience.” (OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp. (2007) 157 Cal.App.4th 835, 864 [68 Cal.Rptr.3d 828].) “Generally, ‘[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information.’ ” (Id. at p. 865.) The issue of reasonable reliance is a question of law only in the “ ‘rare case where the undisputed facts leave no room for a reasonable difference of opinion.’ ” (Alliance Mortgage, at p. 1239.)

 The majority, in part, bases its conclusion that Cedars was entitled to judgment as a matter of law on the fact that Markow did not testify that he relied on Rosner’s business cards and stationery supplied by Cedars. (Maj. opn. ante, at p. 1041, fn. 6.) The majority misses the point in three ways.
First, the business cards and stationery that Cedars provided to Rosner, and which Rosner used, go to the threshold issue of whether Cedars held Rosner out to the world, including the Markows, as one of its agents—in other words, this evidence goes to Cedars’s conduct, not the reasonableness of Markow’s beliefs. That the jury found by a unanimous vote that Cedars intentionally or carelessly created the impression that Rosner was its agent suggests that the jury regarded the business cards and stationery as probative on the issue of Cedars’s conduct.
Second, whether Markow saw the business cards or the stationery is irrelevant, because he did see and he did rely upon Cedars’s website, which described Rosner as the director of its pain management clinic and which said nothing whatsoever about Rosner’s employment by GASP and GASP alone, and he did rely on the fact that Rosner was officed in a building plainly and prominently marked as a Cedars building. By finding (11 to one) that Markow reasonably believed Rosner was Cedars’s agent, the jury implicitly but necessarily and decisively found that Markow’s reliance on the website’s disclosures and the location of Rosner’s office was sufficient for ostensible agency purposes—that is, Markow did not need to testify that he saw or relied upon the Cedars-supplied business cards or stationery.
Third, by focusing on the fact that Markow did not see or rely on the Cedars-supplied business cards and stationery, the majority is doing precisely what it should not do: combing the record for evidence that does not support the verdict. As discussed above, what the majority should be doing instead is reviewing the record in a way that is “ ‘most favorabl[e]’ ” to the Markows and then determining whether “ ‘ ‘ “any substantial evidence, or reasonable inferences to be drawn therefrom” supports the jury’s factual determination that Rosner was the ostensible agent of Cedars. (Pacific Corporate Group Holdings, LLC v. Keck, supra, 232 Cal.App.4th at p. 309, italics added.)

 The majority also places great stock in the fact that the Markows paid GASP bills. (Maj. opn. ante, at p. 1041 & fn. 4.) However, there is no testimony by the Markows that when they were paying those bills they knew that Rosner was employed by GASP and GASP alone—that is, that they knew Rosner was not also employed by Cedars. Cedars could have asked such questions at trial but apparently elected not to do so.