Filed 8/26/16  In re J.E. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.E., a Person Coming Under the Juvenile Court Law. | B267367 (Los Angeles County Super. Ct. No. CK95545) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. F.E., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Frank J. Menetrez, Judge.  Affirmed with directions.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

On appeal, F.E. (Mother) advances three arguments: First, she contends that the juvenile dependency court (dependency court) erred in sustaining a petition made pursuant to Welfare and Institutions Code section 342[1] concerning her eldest child, J.E. (Child). Specifically, Mother contends that the action by the dependency court was void because at the time the Child was under the dual jurisdiction of the dependency court and the juvenile delinquency court (delinquency court). Second, Mother argues that the dependency court erred when it terminated jurisdiction over the Child because conditions that initially warranted jurisdiction still existed. Third, Mother claims that even if termination was proper, the dependency court's termination order failed to specify the frequency and duration of her monitored visits. Although the Los Angeles Department of Children and Family Services (DCFS) contests Mother's other arguments, it concedes that the failure to provide greater specificity with regard to visitation was improper and urges reversal so that the dependency court may make more specific provisions for Mother's supervised visits. While we hold that Mother's first two arguments lack merit, we agree with Mother and DCFS that the visitation order lacked the necessary specificity. Accordingly, we affirm but direct the dependency court to provide the missing specificity in the termination order.

## BACKGROUND

### I. The dependency court acquires jurisdiction over the Child

The Child, his mother and his younger siblings (Sister and Brother) came to DCFS's attention in September 2012 due to reports that Mother had physically abused the Child (at the time, age 10) by hitting him with her hands and a belt.[2] In an interview

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] In December 2011, DCFS received a law enforcement referral regarding allegations against the Child's father (Father) for domestic abuse in the home and physical abuse of the Child. No charges were brought against Father and the family agreed to a Voluntary Family Maintenance (VFM) case. In September 2012, Mother had "fully complied" with the recommended VFM case plan and programs. In September 2012, Father lived in Florida and had been doing so since February 2012.

with a DCFS social worker, Mother admitted to hitting the Child but explained that she did so because she suspected the Child of sexually abusing his Brother (at the time, age 5)—Mother had discovered the Child touching his erect penis to Brother's buttocks while in the shower. Before this shower incident, Brother had been complaining for several months that his buttocks were hurting and Mother had assumed during that time that Brother's discomfort was due to a hygiene issue.

DCFS filed an initial petition on September 18, 2012, and an amended petition on October 24, 2012, alleging that the Child, Sister and Brother were at risk of physical harm due to prior incidents of domestic abuse, Mother's physical abuse of the Child, and Father's physical abuse of the Child and his siblings (the section 300 petition). On November 5, 2012, the dependency court sustained the section 300 petition as amended and declared the Child and his siblings dependent children; the court removed the children from their parents' custody, and ordered family reunification services and supervised visitation.

In May 2013, the dependency court ordered Sister and Brother returned to Mother's custody, but under supervision of DCFS. Although the court noted Mother's progress toward reunification and affirmed that the "goal for the children is to terminate jurisdiction," the court found that continued jurisdiction over all of the children was "necessary because conditions exist which justify jurisdiction" under sections 300 and 364, subdivision (c).

In August 2013, the dependency court ordered the Child returned to Mother's custody. However, the dependency court did not terminate jurisdiction over the Child. Instead, it ordered that the Child remain "a dependent child of the court" and that his return to Mother's custody was under the "supervision of DCFS." Again, the court stated that continued jurisdiction was "necessary because conditions exist which justify jurisdiction" under sections 300 and 364, subdivision (c).

## II. The delinquency court acquires concurrent jurisdiction over the Child

On Monday, December 16, 2013, Mother called DCFS, stating that on Saturday, December 14, Sister (at the time, age 8) had told her that the Child had rubbed his penis

on Sister's vagina while Mother was in the restroom and a second time when the family was at the playground. The police subsequently arrested the Child (at the time, age 12) and housed him at juvenile hall, while Sister and Brother remained in Mother's custody.

On December 18, 2013, the People filed in delinquency court a section 602 petition (the 602 petition) against the Child, alleging two felony counts of lewd acts against a child, one count for his acts against Sister and one count for his acts against Brother. On February 27, 2014, the Child admitted the allegations of the 602 petition.

On March 4, 2014, the delinquency court declared the Child a delinquent child under section 602 and released him to the custody of both DCFS and the probation department. DCFS ultimately reported that the Child was "under dual supervision with [DCFS] as primary and Juvenile Probation as secondary . . . ." [3]

## III. The delinquency court terminates jurisdiction over the Child

On July 21, 2015, more than a year and a half after acquiring jurisdiction over the Child, the delinquency court, having found that the Child successfully completed probation, terminated its jurisdiction, releasing the Child to his "Parents."

## IV. The dependency court terminates jurisdiction over the Child

At the time when the delinquency court exercised jurisdiction over the Child, the dependency court already had jurisdiction over the Child pursuant to the section 300 petition. Moreover, the dependency court, pursuant to the section 300 petition and to a second and subsequent petition, continued to exercise jurisdiction over the Child after the delinquency court relinquished its jurisdiction.

On January 17, 2014, as a result of the sexual abuse allegations against the Child, DCFS filed a second petition regarding the family pursuant to section 342 (the 342

---

[3] Initially, on January 8, 2014, the probation department's multidisplinary team recommended that DCFS should be the lead agency under section 241.1. However, shortly before the Child admitted to the section 602 petition, the multidisciplinary team changed its lead agency recommendation to the probation department. At some point in the spring of 2014, the lead agency role was passed back to DCFS and that is where it remained.

petition), alleging Mother failed to adequately supervise the children resulting in the Child's sexual abuse of Sister.[4]

On July 11, 2014, following a contested hearing, the dependency court sustained the 342 petition, finding by clear and convincing evidence that substantial danger existed to the physical health of the minors. The dependency court ordered the Child removed from Mother's custody, while ordering that Sister and Brother remain in her custody. The July 11 order, as with prior minute orders issued after the filing of the 342 petition, indicated that the hearing was held pursuant to both the section 300 petition and the section 342 petition. There is no indication in the record before us that Mother ever objected to or sought reconsideration of the July 11 order or filed a notice of appeal regarding that order.

On January 9, 2015, the dependency court, consistent with the recommendations of DCFS and the terms of the Child's probation, ordered (a) that jurisdiction be terminated with respect to Sister and Brother and (b) that jurisdiction be retained over the Child and that the Child be placed in Father's custody.[5]

In July 2015, DCFS reported that the Child had a positive relationship with Father and a healthy relationship with his peers and friends, and while the Child's grades were poor he was to receive tutoring once the new school year began. DCFS also reported that Father was participating in domestic violence counseling and individual counseling, and had completed parenting classes. Accordingly, DCFS recommended that the parents

---

[4] Section 342 is a mechanism for supplementing an original section 300 petition; in pertinent part, it provides as follows: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. This section does not apply if the jurisdiction of the juvenile court has been terminated prior to the new allegations."

[5] In March 2014, Father returned to California from Florida in order to safeguard his children and reunify with the Child. In advance of the January 8, 2015 hearing, DCFS reported that the Child wished to be placed in Father's custody and that he would rather be placed in foster care or returned to juvenile hall than live with Mother.

5

share legal custody of the Child, Father be granted primary physical custody of the Child with Mother having monitored visits, and that the dependency court terminate jurisdiction over the Child and the family. DCFS did not make any recommendations as to the frequency or type of monitored visits Mother was to have with the Child. In response to the DCFS's recommendations, Mother requested and the dependency court granted a contested section 364 review hearing so that she could advocate for joint physical custody of the Child.

The dependency court conducted the contested section 364 review hearing on August 21, 2015. After hearing argument from counsel for Mother, Father, the Child, and DCFS, the dependency court stated it was going to adopt DCFS's recommendations and that the conditions that justified its initial assumption of jurisdiction no longer existed. The court stayed its order terminating jurisdiction until it received a family law order granting father sole physical custody of the child, the parents' joint legal custody, and monitored visitation for mother. On August 26, 2015, the dependency court received the family law order and terminated jurisdiction. However, the court's custody order indicates only that mother's visits with the Child are to be supervised; the order, in other words, does not provide any direction with regard to the frequency and duration of her monitored visits.

On August 21, 2015, Mother filed a notice of appeal indicating that the appeal was limited to "all findings and orders made on [August 21, 2015]."

## DISCUSSION

**I.    The dependency court properly sustained the section 342 petition**

Mother contends that the decision by the dependency court on July 11, 2014 to sustain the section 342 petition was void, because "the delinquency court had taken jurisdiction over [the Child] in March 2014"; as a result, the dependency court's action, according to Mother, "was in violation of the Legislature's prohibition against taking dual jurisdiction over a minor under sections 300 and 602." Mother further argues that because the dependency court's July 11, 2014 order was void, it does not matter that she did not (a) object to the order at the time it issued, (b) file a notice of appeal within 60

6

days of the order's issuance, or (c) make any reference to that order in the notice of appeal she filed more than a year later. Mother contends that she was prejudiced by the dependency court's allegedly improper action, because without its findings under section 342, the dependency court would not have had the jurisdiction to issue the custody order granting sole physical custody of the Child to Father. Mother's arguments are without merit for several reasons.

First, Mother's core contention rests on a faulty premise: she assumes that when the delinquency court made the Child a ward of the state in winter 2014, the dependency court somehow lacked jurisdiction over the Child. The record flatly contradicts Mother's assumption. The dependency court acquired jurisdiction over the Child in the fall of 2012—more than a year before the delinquency court—and it did not relinquish that jurisdiction until summer 2015. When the dependency court sustained the 342 petition—which by definition requires the existence of an operative section 300 petition—the dependency court did not take jurisdiction anew, but merely expanded the scope of its already existing jurisdiction.

Second, while "'[d]ual jurisdiction is generally forbidden'" (*In re W.B.* (2012) 55 Cal.4th 30, 46), there is a legislatively-mandated exception. As our Supreme Court explained, "In 2004, the Legislature created a small exception to the ban on dual jurisdiction. Section 241.1, subdivision (e) allows a minor to be designated a 'dual status child' and treated simultaneously under the court's dependency and delinquency jurisdiction, but only in accordance with a precise written protocol. The statute requires that the protocol be developed jointly by the county's probation department and child welfare agency and signed by the heads of these entities as well as the presiding judge of the juvenile court. (§ 241.1, subd. (e).) To avoid duplication of services, county protocols must adopt either an 'on-hold' system, in which dependency jurisdiction is suspended while the child is a ward of the delinquency court, or a 'lead court/lead agency' system, in which the probation department and social services department decide which agency will take the lead in all case-management and court-related matters. (§ 241.1, subd. (e)(5).)" (*In re W.B.*, at pp. 46–47.) Here, as the record makes clear,

7

dependency jurisdiction was not "suspended" or otherwise put "on hold" in the winter 2014. Rather, the jurisdiction of the dependency court continued unabated into summer 2015.

Third, Mother did not suffer any prejudice when the court sustained the section 342 petition. The dependency court's findings under section 300 predated the delinquency court's findings under section 602 by more than a year. Moreover, there is nothing in the record to suggest that had the dependency court not sustained the section 342 petition it would have terminated its jurisdiction before the delinquency court terminated its jurisdiction. From a public policy perspective, it would make little sense for a dependency court to terminate its jurisdiction over a "dual status" minor (a minor victimized by parental abuse or neglect) before the delinquency court terminated its jurisdiction—such action by a dependency court would be tantamount to abandoning a dependent child before determining that it was safe for him or her to return home after his or her tenure as a ward ended. Indeed, section 241.1 anticipates continued dependency court supervision after a child's delinquency case closes. Section 241.1, subdivision (e)(2) requires "joint recommendations" from "the probation department and [DCFS]" in order to "ensure a seamless transition from wardship to dependency jurisdiction, as appropriate, so that services to the child are not disrupted upon termination of the wardship." (§ 241.1, subd. (e)(2).)

Finally, Mother sat on her rights with regard to her arguments about the section 342 petition. "Challenges to void orders, as distinguished from voidable orders, can be made at any time. A judgment or order is void when there is an absence of fundamental jurisdiction. However, an act in excess of jurisdiction simply renders an order of judgment voidable. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of . . . authority over the subject matter or the parties. [Citation.]' [Citation.] In contrast, a court acts in excess of jurisdiction in the broader sense 'where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain

8

procedural prerequisites.' [Citation.] 'Action "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" . . . is not void, *but only voidable*.' [Citation.] A claim that does not concern the trial court's fundamental subject matter jurisdiction is waived if not timely asserted." (*In re Adoption of Myah M*. (2011) 201 Cal.App.4th 1518, 1531.)

As noted above, the section 342 petition was, by its very nature, a supplement to the preexisting section 300 petition—in other words, any challenge to the order sustaining the section 342 petition could not have been a challenge to the dependency court's fundamental jurisdiction; a challenge limited to just the section 342 order could only be a challenge to a voidable order. As a result, any appellate challenge to the order sustaining the section 342 petition would need to be made within 60 days of the minute order (Cal. Rules of Court, rule 8.104(a)(1)), not more than 365 days later, as occurred here.

"[T]he general rule in juvenile dependency cases is that *all* orders (except for an order setting a section 366.26 hearing), starting chronologically with the dispositional order, are appealable *without limitation*." (*In re Gabriel G*. (2005) 134 Cal.App.4th 1428, 1435, first italics added; see *In re T.W*. (2011) 197 Cal.App.4th 723, 729 ["[t]he first appealable order in a dependency case is the dispositional order"].) However, "'an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.'" (*In re T.G*. (2015) 242 Cal.App.4th 976, 984.) This is so because permitting a parent "to raise issues which go to the validity of a final earlier appealable order would directly undermine [the] dominant concerns of finality and reasonable expedition" underlying all juvenile dependency proceedings. (*In re Meranda P*. (1997) 56 Cal.App.4th 1143, 1152.) In other words, an appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed. (*In re Elizabeth G*. (1988) 205 Cal.App.3d 1327, 1331.) While this forfeiture rule is not absolute, its application is inappropriate only when an error has so "fundamentally undermined the statutory scheme" that the parent is prevented from availing himself or

9

herself of its protections. (*In re Janee J*. (1999) 74 Cal.App.4th 198, 208.) Moreover, "defects must go beyond mere errors that might have been held reversible had they been properly and timely reviewed." (*Id*. at p. 209.)

Here, without ever mentioning the July 11, 2014 order in her notice of appeal, Mother attempts to challenge that order even though the order she expressly appealed was the order most recently entered in the case and it was entered more than year after the July 11, 2014 order. In short, Mother's attempt to shoehorn a challenge to the arguably voidable July 11, 2014 order into her appeal of the August 21, 2015 termination order was improper, and patently so.

So, for all of the foregoing reasons, we reject Mother's arguments regarding the section 342 petition.

## II. The dependency court properly terminated jurisdiction

Mother contends that the dependency court erred when, following the contested section 364 review hearing, it terminated jurisdiction over the Child; this decision was in error, argues Mother, because conditions that initially warranted jurisdiction (domestic abuse between the parents, Mother's physical abuse of the Child, and Father's physical abuse of the Child and his siblings) "still existed." Mother's argument is without merit.

### A. *Section 364 and the standard of review*

The dependency court's August 21, 2015 decision to terminate jurisdiction over the Child and award physical custody of the Child to Father was made pursuant to section 364. Section 364, subdivision (c) currently provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. *The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn.* Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision

10

is necessary." (Italics added.) Section 364, subdivision (c), in other words, establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision." (*In re Shannon M*. (2013) 221 Cal.App.4th 282, 290.)

"At the section 364 review hearing, 'the court is not concerned with reunification, but in determining "whether the dependency should be terminated or whether further supervision is necessary." [Citations.]' [Citations.] The juvenile court makes this determination 'based on the totality of the evidence before it.' [Citation.] Part of the evidence the juvenile court must consider is the supplemental report of the social worker [citation], who must 'make a recommendation regarding the necessity of continued supervision.'" (*In re Aurora P*. (2015) 241 Cal.App.4th 1142, 1155.)

Where, as here, the social services agency recommends termination of jurisdiction, termination will be the "'default result'" unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn. (*In re Aurora P*., *supra*, 241 Cal.App.4th at pp. 1155–1156.)

We review findings under section 364 for substantial evidence. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172; *In re D.B*. (2015) 239 Cal.App.4th 1073, 1086.) Under the substantial evidence standard, our review "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support" the judge or jury's factual determinations. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874; *Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1489.) "'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence *this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . .*'" (*Jonkey v. Carignan Construction Co*. (2006) 139 Cal.App.4th 20, 24, italics added.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is

11

evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

      B.      *Substantial evidence supports termination of jurisdiction*

Mother's argument suffers from a number of evidentiary problems. First, at the contested hearing, Mother did not introduce any evidence that there was continuing domestic abuse between herself and Father; indeed, the risk of such abuse arising was greatly reduced from when DCFS filed the section 300 petition, because Mother and Father were living separately at the time of the contested hearing. Nor did Mother introduce any evidence that there was a risk of Father physically abusing the Child. In fact, DCFS in its written report recommended termination of jurisdiction, inter alia, because the Child had a "positive relationship" with Father, who was employed on a full-time basis with a subsidiary of Verizon and whose home was in "good condition." Moreover, Father, after returning to California, was participating in domestic violence counseling, individual counseling, and parenting classes.

Second, at the hearing, the Child's attorney stated that the Child "does really well with his father," that the two of them "have bonded," and that the Child "wants to remain" with Father. The Child's attorney further stated that the Child did not "wish to live with his mother," that he did not want to have anything except monitored visits with Mother.

Third, amplifying DCFS's written report recommending termination and sole physical custody with Father, counsel for DCFS stated at the hearing that "entering any orders other than joint legal, sole physical to the father, and monitored visits for the mother would have a negative impact on [the Child's] well-being."

In short, substantial evidence supported the court's decision to order joint legal custody, sole physical custody to Father, and monitored visitation with Mother, and to terminate jurisdiction.

**III.    The dependency court failed to provide specifics with regard to visitation**

Mother's final claim is that the dependency court's visitation order was improper because the court failed to specify the frequency and minimum duration of mother's supervised visits.  DCFS, quite correctly, concedes that this argument has merit.

A visitation order "must give some indication of how often visitation should occur."  (*In re E.T.* (2013) 217 Cal.App.4th 426, 439.)  Moreover, while a court "may delegate responsibility for managing details [of visits,] such as the time, place, and manner," it "may not abdicate its discretion to determine whether visitation will occur to a third party."  (*Ibid.*; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.)

By not providing any specifics, the dependency court effectively delegated to Father the power to determine whether visitation will occur.  Accordingly, we remand the matter with directions "to specify the frequency and duration" of Mother's visits.  (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314–1315.)

## DISPOSITION

The dependency court is directed to specify the frequency and duration of Mother's visits.  In all other respects, the August 21, 2015 order terminating jurisdiction is affirmed.

NOT TO BE PUBLISHED.


                                                    JOHNSON, J.


We concur:


          CHANEY, Acting P. J.


          LUI, J.

13