[No. C037787. Third Dist. Sept. 30, 2003.]

GARY THOMPSON et al., Plaintiffs and Appellants, v.
ALLEN B. MILLER, JR. et al., Defendants and Appellants.

[No. C038013. Third Dist. Sept. 30, 2003.]

GARY THOMPSON et al., Plaintiffs and Respondents, v.
ALLEN B. MILLER, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION‡]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

Freidberg Law Corporation, Edward Freidberg and Stephanie J. Finelli for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Orrick, Herrington & Sutcliffe, Norman C. Hile, James E. Houpt and Margaret Carew Toledo for Defendants and Appellants.

OPINION

**NICHOLSON, Acting P. J.**—Plaintiffs, who were minority shareholders in a closely held corporation, sued the majority shareholder and another shareholder. They alleged that defendants, in convincing plaintiffs to sell their shares, committed a breach of fiduciary duty, fraud, and elder abuse. A jury, however, rejected their claims and returned verdicts in favor of defendants. Thereafter, the trial court denied defendants' claim for expert witness fees pursuant to Code of Civil Procedure section 998, which defendants requested because they made a pretrial offer of settlement more favorable to plaintiffs than was the eventual judgment. The trial court also denied the motion of one of defendants (the majority shareholder) for attorney fees, entitlement to which he claimed under the agreements executed by plaintiffs when they sold their shares. Plaintiffs appeal, contending the evidence does not support the judgment in defendants' favor. Defendants also appeal. They assert they are entitled to expert witness fees, and the majority shareholder contends the trial court erred by denying his motion for attorney fees.[1]

In the unpublished portion of our opinion, we conclude plaintiffs waived their assertions that the evidence does not support the judgment, or, in other

---

[1] In C037787, plaintiffs appeal the judgment on the verdicts against them, and defendants cross-appeal the denial of their request for expert witness fees as costs. In C038013, the majority shareholder appeals the trial court's denial of his motion for attorney fees. The two cases were consolidated for consideration in this court.

words, that the trial court should have entered judgment in plaintiffs' favor as a matter of law, because plaintiffs presented an unacceptable statement of facts in their opening brief. While they give lip service to the proper standard on appeal, they do not, in fact, construe the record in its light most favorable to the judgment. Consequently, their arguments are based on an improper view of the facts.

The argument of the majority shareholder that he was entitled to attorney fees has merit. His agreements with plaintiffs at the time of his purchase of their shares provided for an award of attorney fees to the prevailing party in "any dispute under (the agreements)." Also in the agreement, plaintiffs stated they were not relying on the majority shareholder's representations. At trial, the majority shareholder asserted this provision of the contract as a defense, thus creating a dispute under the agreements. The trial court therefore erred in determining that the agreements did not provide for an award of attorney fees in this action.

Defendants' assertion the trial court erred in denying expert witness fees pursuant to Code of Civil Procedure section 998 also has merit. Defendants made a pretrial offer of settlement, proposing to pay plaintiffs an amount within the approximate range defendants would have been required to pay if they had not prevailed. We find the trial court's refusal to award expert witness fees was an abuse of discretion.

## FACTS

■ Plaintiffs appeal after a jury verdict in favor of defendants. Accordingly, our summary of the significant facts will cast the evidence in its light most favorable to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of defendants. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631 [85 Cal.Rptr.2d 386].) In their opening brief, plaintiffs state: "Because this appeal is from a jury verdict in favor of defendants, the facts set forth herein are based upon the testimony of the defendants and defense witnesses." This statement and, as will be seen, plaintiffs' statement of facts in their opening brief do not properly reflect the standard of review. We do not limit our review to the evidence presented by the defense; instead, we consider the entire record and construe it, as noted above, in its light most favorable to the verdict. (*Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 259 [45 Cal.Rptr.2d 90].)

### The Parties and Deltam

In 1984, defendant Allen B. Miller, Jr., created Deltam Systems, Inc. (Deltam), as a closely held corporation engaged in the Silicon Valley business of placing information technology workers in temporary positions. Defendant

Stephen R. Haessler assisted in forming the company but later left to work in Portland, Oregon. Miller and Haessler each received founders' stock in Deltam for their efforts. At the times relevant to this litigation, Miller owned more than 50 percent of the outstanding shares.

Miller solicited friends, neighbors, and business associates to buy stock and supply funding for the new company. Plaintiffs were among those early shareholders. Plaintiffs Carroll and Priscilla Bravo purchased 20,000 shares at $0.25 per share, for a total investment of $5,000. Plaintiffs Joseph and Patricia George invested $10,000, purchasing 40,000 shares at $0.25 per share. Plaintiffs Douglas and Helen Mahr bought 20,000 shares at $0.25 per share, totaling $5,000. Plaintiffs Gary and Millie Thompson invested at two different prices, buying 60,000 shares at $0.25 per share and 16,666 shares at $0.30 per share, for a total investment of $20,000. Sidney and Mara Diamond invested $20,000, purchasing 80,000 shares at $0.25 per share. While Mara Diamond is a plaintiff in this action, Sidney was not a plaintiff and passed away about two months after the complaint was filed. Before plaintiffs purchased their shares, they certified that they had sufficient knowledge and experience in financial and business matters to evaluate the risk in purchasing stock.

Deltam, with Miller as the chief executive officer, attempted to grow through its first 10 years of existence. Changes in tax laws and other challenges, however, made it difficult for Deltam to prosper. In 1992, the corporation almost collapsed with a severe cash shortage. After 1992, Deltam began placing foreign nationals in information technology jobs. By March 1994, the company posted its largest profit to date, about $200,000 for the prior year.

### Plaintiffs' Sale of Shares

Some Deltam shareholders, including Sidney Diamond, were dissatisfied with the performance of the company and wanted a way to recoup their investment. At a shareholders' meeting in September 1994, Miller proposed a share repurchase plan that would be made available to all shareholders. Because of legal hurdles, Deltam was unable to offer the repurchase plan, so Miller, personally, offered to buy minority shareholders' stock. In a letter to shareholders in December 1994, Miller stated he intended to purchase shares from anyone who desired to sell. The letter included Deltam's financial statements. Miller then called each shareholder, offering to buy the shares for $0.16 per share. He did not tell the shareholders, as plaintiffs alleged, that Deltam was in poor financial condition.

In late December 1994 and early January 1995, plaintiffs sold their shares to Miller. Other shareholders elected not to sell their stock. In a "Share

Purchase Agreement," signed by each plaintiff, they stated: "Seller represents and warrants to Purchaser and the Company . . . that . . . Seller's decision to sell or otherwise convey the Shares as provided herein was not made in reliance upon any representation made by Purchaser, the Company or its officers, directors, agents or others acting with or on behalf of any of them; and . . . Seller is capable of evaluating the merits and risks of this sale and has the ability to protect Seller's own interests in this transaction."

### Deltam After Plaintiffs Sold Shares

After Miller completed the purchase of plaintiffs' shares, Haessler agreed to return to Deltam as a paid consultant. Haessler desired a larger stake in Deltam, so Miller sold or transferred some the stock he obtained from plaintiffs to Haessler for $0.24 per share. Miller also pledged additional stock he obtained from plaintiffs to sell in the future to Haessler for $0.21 per share, conditioned on Haessler meeting specified goals.

In 1996, more than one year after plaintiffs sold their Deltam stock, an economic upturn began in Silicon Valley. After rejecting several acquisition offers, Deltam accepted an offer of acquisition three years after plaintiffs sold their shares, in late 1997, for $7 per share from Corestaff, Inc.

## PROCEDURE

Plaintiffs filed suit against Miller and Haessler, alleging fraud, concealment, and breach of fiduciary duty, and seeking rescission of their sale of stock. They also alleged Miller and Haessler conspired to commit these torts. After trial, the jury returned special verdicts in favor of defendants on all causes of action. Plaintiffs filed, but the trial court denied, a motion for new trial in which plaintiffs contended defendants breached their fiduciary duties to plaintiffs as a matter of law. Defendants, as prevailing parties, filed a memorandum of costs. Plaintiffs responded with a motion to tax costs, asserting defendants were not entitled to recover $55,665 in expert witness fees. The trial court granted the motion to tax costs with respect to expert witness fees. Miller moved for $1,183,778.45 in attorney fees pursuant to the Share Purchase Agreements. The trial court denied the motion.

## DISCUSSION

### I[*]

*Plaintiffs' Statement of Facts*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

*Attorney Fees*

When plaintiffs sold their stock to Miller, they each signed a document entitled "Share Purchase Agreement." Contained in that agreement is the following attorney fees provision: "The prevailing party in any dispute under this Agreement shall be entitled to reasonable attorneys fees incurred in such dispute."

In their original complaint, plaintiffs asserted that venue in Sacramento was proper because the Share Purchase Agreements were entered into there. They alleged they signed the Share Purchase Agreements in reliance on Miller's representations. And they claimed the right to an award of attorney fees: "As a further direct and legal result of the above described conduct of DEFEND-ANT, PLAINTIFFS incurred attorney fees, costs and expenses to bring the instant action and prosecute DEFENDANT for his fraud, misrepresentations, deceit and breaches of fiduciary duties to PLAINTIFFS, all to their damage and in an amount to be ascertained at trial. PLAINTIFFS THOMPSONS, BRAVOS, and MAHRS are entitled to attorney fees in accordance with paragraph 6 of the Share Purchase Agreements attached hereto as Exhibits 'A', 'B' and 'C'." Plaintiffs' two amended complaints made essentially the same allegations with respect to the Share Purchase Agreements and their right to recover attorney fees on every cause of action pursuant to those contracts. Defendants' answer likewise claimed a right to attorney fees under the Share Purchase Agreements and asserted as a defense plaintiffs' state-ments in those agreements that they were not relying on the representations of Miller.[3]

---

[*]See footnote, *ante*, page 327.

[3] As noted above, the Share Purchase Agreements each stated: "Seller represents and warrants to Purchaser and the Company . . . that . . . Seller's decision to sell or otherwise convey the Shares as provided herein was not made in reliance upon any representation made by Purchaser, the Company or its officers, directors, agents or others acting with or on behalf of any of them; and . . . Seller is capable of evaluating the merits and risks of this sale and has the ability to protect Seller's own interests in this transaction."

During trial, plaintiffs sought to overcome Miller's assertion of the Share Purchase Agreements as a defense to the causes of action. They continued to assert their right to attorney fees under those agreements. During the opening statements, plaintiffs conceded Miller's right to recover attorney fees should he prevail: "And in this lawsuit one of the issues that you will decide is whether this agreement was obtained by fraudulent representations or concealments of known facts because if it was it is not enforceable and that's one of the issues in this case. [¶] (Reading) [']The agreement also provides the prevailing party in any dispute under this agreement shall be entitled to reasonable attorneys fees incurred in such dispute.['] [¶] (Finished reading.) So you don't get attorneys fees unless you have this written agreement. The clients don't get paid for their attorney's fees, they have to suffer that for themselves. So now he has a provision in here if they want to fight this and they lose they will have to pay his attorney's fees, another way of discouraging them from this litigation."

After the jury verdicts in defendants' favor, plaintiffs sought to have the trial court rescind the Share Purchase Agreements and set aside the judgment. The trial court refused.

Miller filed a motion for $1,183,778.45 in attorney fees. Finding that the Share Purchase Agreements did not give Miller the right to recover attorney fees and that plaintiffs were not estopped from so asserting, the trial court denied the motion for attorney fees. The court held: "In the instant case, the causes of action on which defendant prevailed sounded in tort not contract. The fact that plaintiffs sought rescission of the share purchase agreements as one possible remedy for the alleged fraud does not mean that the action sounds in contract. The court has already determined, in this case, that rescission is a remedy, not a separate cause of action. [¶] The question, then, for this Court, is whether the fee provision at issue is broad enough to encompass plaintiffs' tort claim. The Court finds that it is not. [*Exxess Electronixx v. Heger Realty Corporation* (1998) 64 Cal.App.4th 698 [75 Cal.Rptr.2d 376] (*Exxess Electronixx*)] is on point. Its reasoning is persuasive. The fee provision covers disputes 'under the contract.' It is too narrowly drawn to encompass the tort claims asserted in this action."

Miller contends the trial court erred in determining that the Share Purchase Agreements did not provide for an award of his attorney fees in this action. He asserts he is entitled to an award because he used a provision of the agreements to defend against plaintiffs' claims.

The parties did not present extrinsic evidence to interpret the attorney fees provision of the contract. Therefore, we must determine, de novo, whether the applicable statutes and the Share Purchase Agreements entitled Miller to the

award he sought. (*Exxess Electronixx, supra,* 64 Cal.App.4th at p. 705.) "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.) "As to tort claims, the question of whether to award attorneys' fees turns on the language of the contractual attorneys' fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision. [Citation.] This distinction between contract and tort claims flows from the fact that a tort claim is not 'on a contract' and is therefore outside the ambit of [Civil Code] section 1717. [Citations.]" (*Exxess Electronixx, supra,* 64 Cal.App.4th at p. 708.)

In *Exxess Electronixx,* the contract provided for an award of attorney fees for "an action or proceeding to enforce the terms [of the contract] or declare rights hereunder." (*Exxess Electronixx, supra,* 64 Cal.App.4th at pp. 702, 708–709.) Finding that the tort claims were asserted in that action neither to "enforce the terms [of the contract]" nor to "declare rights [thereunder]," the reviewing court concluded the prevailing party was not entitled to an award of attorney fees.

Here, Miller is a prevailing party. To determine whether he is entitled to an award of attorney fees, we must determine, consistent with the language of the Share Purchase Agreements, whether this action entailed "any dispute under [the Share Purchase Agreements] . . . ." " 'To answer this question, we apply the ordinary rules of contract interpretation. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. . . . Such intent is to be inferred, if possible, solely from the written provisions of the contract. . . . The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' . . . , controls judicial interpretation. . . . Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. . . ." ' [Citation.]" (*Exxess Electronixx, supra,* 64 Cal.App.4th at p. 709.)

Because the attorney fees provision of the Share Purchase Agreements differed from the attorney fees provision of the contract in *Exxess Electronixx,* that case is not directly on point. There, the prevailing party was entitled to an award in an "*action*" to enforce the contract or declare rights under it. Here, the provision is different, providing for an award in a "*dispute*" under the agreements. A major difference between the two provisions is the term "dispute" instead of "action." Another difference is *Exxess Electronixx* dealt with an action to enforce the terms of a contract; we deal with a dispute "under" a contract.

Miller contends that, because the statement by plaintiffs in the Share Purchase Agreements that they were not relying on representations made by Miller became his primary defense to plaintiffs' tort claims, this action involved a "dispute under" the Share Purchase Agreements. The defendant in *Exxess Electronixx* made this same argument, that its defense was based on a provision of the contract that also contained an attorney fees provision.

In *Exxess Electronixx*, the court appeared to agree that use of a contract provision as a defense in a tort action could give rise to recovery of attorney fees under that contract. The court went on to find, however, that the specific attorney fees provision found in that contract did not allow such use. The court's discussion is instructive:

"[The defendant] argues that it is entitled to fees because its defense to the cross-complaint was based on a provision of the lease, in particular, the 'as is' clause. According to [the defendant], all of [the plaintiff's] claims were meritless because [the plaintiff] had expressly agreed in the lease to take the property 'as is' and 'with all faults' and had further agreed to rely solely on its own investigation of the property. The 'as is' clause, so the argument goes, negated any duty on [the defendant's] part to disclose defects in the property. [Citation.]

"Leaving aside the merits of the 'as is' defense, the question remains whether it comes within the attorneys' fee provision of the lease. Assuming that [the defendant] is the prevailing party in the case, the lease authorizes attorneys' fees '[i]f any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder.' (Italics added.) While the 'as is' defense may have had the effect of 'enforc[ing] the terms' of the lease or 'declar[ing] rights [there]under,' [the defendant] did not 'bring[] an action or proceeding' to accomplish those goals. Under any reasonable interpretation of the attorneys' fee provision, we cannot equate raising a 'defense' with bringing an 'action' or 'proceeding.' By asserting a defense to the cross-complaint, [the defendant] did not bring an action or proceeding to enforce the lease or to declare rights under it." (*Exxess Electronixx, supra,* 64 Cal.App.4th at pp. 711–712, italics and fn. omitted.)

But here, the specific language of the attorney fees provision is broader than the language of the provision in *Exxess Electronixx*. There is no limitation requiring that an action be brought to enforce the agreements or to declare rights under them. The attorney fees provision applies, simply, to "any dispute under [the agreements]." This language varies substantially from the attorney fees provision in *Exxess Electronixx*, which applied to an *action* to enforce the contract or declare rights under it, and the language of Civil Code section 1717, which applies to "any *action* on a contract." (Italics added.) "An

'action' is 'a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law[;] . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.' (Black's Law Dict. (6th ed. 1990) p. 28, col. 1; accord, Code Civ. Proc., § 20–22.) . . . In contrast, a 'defense' is '[t]hat which is offered and alleged by the party *proceeded against in an action or suit,* as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . [¶] it is a] *response to the claims* of the other party, setting forth reasons why the claims should not be granted.' (Black's Law Dict., *supra,* p. 419, col. 2, italics added.)" (*Exxess Electronixx, supra,* 64 Cal.App.4th at p. 712, fn. 15, ellipses and brackets in original.)

Here, however, the right to recover attorney fees hinges on whether there is a "dispute," or "any dispute" at all, not an "action," under the contract. A "dispute" is a more general term that includes any conflict or controversy. (Black's Law Dict. (7th ed. 1999) p. 485, col. 1.) While "dispute" includes a conflict giving rise to an action, it is not necessarily limited to such a conflict. As a matter of plain language, whether plaintiffs' tort claims are defeated by their statements in the agreements that they did not rely on Miller's representations is a dispute—that is, a conflict or controversy—under the Share Purchase Agreements upon which the result depends just as much as would have been an allegation that defendants breached a duty imposed by the agreements. Any conflict concerning the effect of the agreements gives rise to a right to an attorney fees award by the prevailing party. The assertion of the defense, fatal to plaintiffs' causes of action, that the Share Purchase Agreements established that plaintiffs did not rely on Miller's representations when they sold their Deltam stock, created a dispute under the agreements. Moreover, the dispute was under the Share Purchase Agreements because the dispute was based on their validity. Therefore, Miller is entitled to recover attorney fees because a dispute arose concerning the effect of the Share Purchase Agreements.

■    The trial court erred in denying Miller's motion for attorney fees pursuant to Code of Civil Procedure section 1021. On remand, the trial court must determine and award reasonable fees.

Having found that the attorney fees provision of the Share Purchase Agreements gave defendants the right to recover attorney fees, we need not consider whether plaintiffs are estopped from denying the applicability of the attorney fees provision. Additionally, we need not consider defendants' assertion that plaintiffs' attempt to rescind the Share Purchase Agreements gave rise to a right to attorney fees.

III

*Expert Witness Fees*

Before trial, defendants made an offer to settle the case for $300,000. Plaintiffs did not accept the offer. Thereafter, defendants prevailed, thus obtaining a judgment more favorable to them than was their settlement offer.

Defendants filed a memorandum of costs, including approximately $55,000 in expert witness fees incurred after they made the settlement offer. Plaintiffs responded with a motion to tax costs and argued that defendants were not entitled to expert witness fees. The trial court granted the motion to tax costs relating to the expert witness fees, stating: "As to the motion to tax costs, the Court exercises its discretion under [Code of Civil Procedure section] 998(c) to deny defendants' recovery of expert witness fees in their entirety. In exercising its discretion, the Court has considered the reasonableness of the offer in view of the potential liability, as well as the purpose of the statute, and concludes that the interests of justice would not be served by an award of expert witness fees under the circumstances."

Defendants assert the trial court abused its discretion in denying an award of expert witness fees. We agree.

Code of Civil Procedure section 998, subdivision (b), provides in part: "Not less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." Subdivision (c) of section 998 provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her post-offer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

■ Whether the settlement offer was reasonable and made in good faith is left to the sound discretion of the trial court. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700 [241 Cal.Rptr. 108].) However, when a party obtains a judgment more favorable than its pretrial offer, it is presumed to have been reasonable and the opposing party bears the burden of

showing otherwise. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753] (*Nelson*).) "Even a modest or 'token' offer may be reasonable if an action is completely lacking in merit." (*Ibid.*) On appeal, the losing party has the burden of establishing the trial court abused its discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) We will not substitute our opinion for that of the trial court unless the trial court clearly abused its discretion, resulting in a miscarriage of justice. (*Nelson, supra,* at p. 136.)

■ In *Nelson*, the court based the reasonableness of an offer on how well it approximates the amount the party will have to pay if found liable, discounted by an appropriate factor for receipt of money before trial.[4] If the offer is in a range of reasonably possible results and the offeree has reason to know the offer is reasonable, then the offeree must accept the offer or be liable for costs under Code of Civil Procedure section 998. (*Nelson, supra,* 72 Cal.App.4th at p. 135.) Here, $300,000 was within the approximate range for which defendants could have been found liable. Each plaintiff would have reaped a gain of more than five times the initial investment in Deltam. Furthermore, it exceeded the alleged underpayment by Miller based on the value, at the time of sale, that plaintiffs' own expert placed on the stock. Plaintiffs had this information; nevertheless, they declined the offer. This was not a token offer. It was generous.

Plaintiffs are hard-pressed to defend the trial court's ruling. They assert, simplistically, that whether to award expert witness fees was subject to the trial court's discretion and defendants have not succeeded in showing an abuse of discretion. In making this argument, they make no mention of the amount of defendants' offer or its relationship to what they may have gained in the event of a jury verdict favorable to them. The cases on which they rely do not support their position that $300,000 was not a reasonable offer.

The trial court based its denial of expert witness costs on perceived unreasonableness of the offer and, in the trial court's words, "the purpose of the statute." As we have discussed, the offer was reasonable. "It is well settled that the purpose of this section is to encourage the settlement of litigation without trial. Its effect is to punish the plaintiff who fails to accept a reasonable offer from a defendant. [Citations.]" (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 711 [235 Cal.Rptr. 510], italics omitted.) Denial of expert witness fees, here, does not further the purpose of the statute.

---

[4] We would also add a discount for the probability of success of the claim for purposes of determining the reasonableness of the offer.

The trial court's denial of expert witness fees was arbitrary, a clear abuse of discretion, given the circumstances. Accordingly, we must reverse the trial court's taxing of defendants' costs and remand for an award of reasonable expert witness fees.

## DISPOSITION

The judgment is affirmed. The orders denying attorney fees and taxing costs are reversed for proceedings to determine and award Miller's reasonable attorney fees and defendants' reasonable expert witness fees. Defendants shall recover their costs on appeal.

Kolkey, J., and Robie, J., concurred.

A petition for a rehearing was denied October 27, 2003.