Filed 2/6/26  Velaro v. LG Electronics Alabama CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| VELARO, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LG ELECTRONICS ALABAMA, INC., <br><br> Defendant and Respondent. | B336280 <br><br> (Los Angeles County Super. Ct. No. 22SMCV02457) |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford, III, Judge.  Affirmed.

Atabek & Co., Jon A. Atabek, Nyja A. Prior and Shirin Ehyaei for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Calvin E. Davis, Christopher R. Wagner and Crystal W. Yu for Defendant and Respondent.

_____

Velaro, Inc. (Velaro), sued LG Electronics Alabama, Inc. (LG), for breach of contract and services rendered. The trial court granted LG's motion to dismiss the operative first amended complaint based on improper forum, as the contract underlying Velaro's claims contained a forum selection clause mandating resolution of all disputes arising thereunder in Alabama. After entry of judgment in its favor, LG moved for attorney fees under Code of Civil Procedure sections 1021, 1032, and 1033.5. In the alternative, LG also sought fees under Civil Code section 1717.[1]

The trial court awarded LG the attorney fees it incurred in litigating its motion to dismiss. Noting LG was not the party prevailing on the contract for purposes of section 1717, the court determined LG was nonetheless entitled to its fees under sections 1021, 1032, and 1033.5. It found the attorney fee provision in the parties' contract broadly authorized an award of fees for the prevailing party in *any* dispute arising under the contract, including the application of the contract's forum selection clause.

Velaro seeks reversal of the attorney fee award. It asserts section 1717 alone governs all attorney fee motions arising from contract claims and, therefore, LG was not entitled to its fees because it was not the "prevailing party on the contract" per the applicable statutory definition. (§ 1717, subd. (b)(1).) Velaro also argues that, if allowed to stand, the attorney fee award in this case will pave the way for inconsistent and absurd outcomes. We find these contentions unpersuasive, and we affirm.

---

[1]     Except for references to Civil Code section 1717, which we will refer to as "section 1717," all undesignated statutory references are to the Code of Civil Procedure.

# BACKGROUND

## I. The Live Chat Agreement

LG services and sells parts and accessories for LG products in the United States. Velaro is a technology corporation that provides live-chat, traffic monitoring, consulting, and customer services to clients.

In 2008, LG executed an agreement to purchase a license for Velaro's software application enabling real-time communication between LG's customers and staff on its website (Live Chat Agreement). The Live Chat Agreement had the following forum selection clause and choice of law provision: "This Agreement shall be governed by, construed, interpreted and enforced according to the laws of the State of Alabama and of the United States of America, without regard to principles of conflict of laws and rules. Each party hereby consents to the exclusive jurisdiction of the courts of the State of Alabama and United States Federal Courts located in Alabama to resolve any dispute arising out of this Agreement."

The Live Chat Agreement remained in place for the next 14 years and was amended periodically. Relevant to this appeal is the parties' February 2022 amendment adding the following attorney fee provision: " 'The prevailing party in any dispute or proceeding arising hereunder shall be entitled to recover its costs and expenses incurred therein (including reasonable attorneys' fees and expenses).' "

## II. The Underlying Action

In November 2022, Velaro sued LG for breach of contract and services rendered. Its operative first amended complaint (FAC) alleged LG terminated the Live Chat Agreement prior to the expiration of the two-year term to which the parties had

3

recently agreed and refused to pay the full amount due. The FAC further alleged that sometime after May 26, 2021, LG's Digital Channel Operations Manager clicked through an updated version of a " 'Terms of Service' " agreement, which contained a forum selection clause and choice of law provision requiring the parties' disputes to be resolved in Los Angeles and under California law, respectively. According to the FAC, the click-through agreement superseded the Live Chat Agreement's forum selection clause and choice of law provision.

In January 2023, LG moved to dismiss the FAC under sections 410.30 and 418.10 based on the Live Chat Agreement's forum selection clause. The trial court granted the motion in April 2023, and a judgment of dismissal was entered in LG's favor in May 2023.

## III.  LG's Motion for Attorney Fees

In July 2023, LG filed a motion for attorney fees under sections 1021, 1032, and 1033.5. In the alternative, LG sought to recover its attorney fees under section 1717. Arguing it was a prevailing party under both section 1032 and section 1717, LG asserted entitlement to the $64,000 in fees it incurred in defending the underlying case.

In October 2023, the trial court awarded LG the attorney fees it incurred in litigating its motion to dismiss. In support of its ruling, the court first observed that under *DisputeSuite.Com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968 (*DisputeSuite*), LG "is clearly not the prevailing party under Civil Code § 1717" because it "merely obtained a dismissal of [the underlying] . . . action" and "ha[d] yet to prevail on the contract dispute between the parties." Immediately thereafter, however, the trial court acknowledged LG "only argue[d] Civil Code § 1717 in the

4

alternative" and "primarily argue[d] it is entitled to recover fees under" sections 1021, 1032 subdivision (b), and 1033.5, subdivision (a). In analyzing LG's entitlement to fees under those provisions, the court noted the breadth of the Live Chat Agreement's attorney fee provision, which "encompasses any dispute" thereunder, "including any dispute over the interpretation and enforcement of a specific provision." The court concluded that because LG "prevailed on its motion to dismiss based on the forum selection clause[,]" LG was "entitled to recover those fees incurred in litigating the motion to dismiss only."

Velaro timely appealed.

## DISCUSSION

## I.     Governing Principles and Standard of Review

### A.     Statutory Framework – Attorney Fees

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees. [Citation.] Code of Civil Procedure section 1021, which codifies this rule, provides: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .' In other words, section 1021 permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees. [Citations.] Thus, ' "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

5

Sections 1032 and 1717 are "[t]he two basic statutes regularly employed by the courts to award fees in contract cases . . . ." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1139 (*Sears*).)  These statutes "differ in their analytic approach to the issue" (*ibid*) but ultimately "provide[ ] complementary discretion for the award of statutory costs, including fees where they may be properly considered as costs." (*Id.* at p. 1158.)

Section 1032, subdivision (b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." For purposes of section 1032," '[p]revailing party' includes . . . a defendant in whose favor dismissal is entered . . . ." (§ 1032, subd (a)(4).)  When authorized by contract, statute, or law, attorney fees are recoverable as costs under section 1032. (§ 1033.5, subd. (a)(10).)

Section 1717, subdivision (a) provides, in relevant part: "In any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract,* shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (*Ibid.*, italics added.)  Thus, "[b]y its terms . . . , Civil Code section 1717 has a limited application.  It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342 (*Xuereb*); *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th

6

984, 993 (*Maynard*) [recognizing section 1717's limited application].)

For purposes of section 1717, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) Fees awarded under section 1717 "are allowable costs under Section 1032 as authorized by" subdivision (a)(10)(A). (§ 1033.5, subd. (c)(5)(B).)

## B. Standard of Review

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citations.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 751.)

Here, "the material facts are largely not in dispute" and, as discussed below, Velaro's arguments present questions of law regarding the legal basis for LG's fee award. (*Mountain Air*, *supra*, 3 Cal.5th at p. 751.) Thus, "our review is de novo." (*Ibid.*)

## II. Analysis

### A. Velaro Has Not Shown Civil Code Section 1717 Alone Governs All Fee Motions in Contract Cases

Velaro argues that per *Sears*, *supra*, 60 Cal.App.4th 1136, and the plain language of section 1021, "all motions for attorneys' fees arising from contract claims are governed by the definition of

7

'prevailing party' set forth in . . . [section] 1717." Further, Velaro contends, under *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 (*Exxess*), the broad language of the Live Chat Agreement's attorney fee provision does not render section 1717 inapplicable. Velaro therefore asserts that pursuant to section 1717, subdivision (b) and our Supreme Court's interpretation thereof in *DisputeSuite*, *supra*, 2 Cal.5th 968, LG was not a "prevailing party on [a] contract" entitled to attorney fees, such that reversal is required. (See *DisputeSuite*, at p. 976 [defendant who successfully enforced forum selection clause in the parties' contract was not the "prevailing party on the contract" under section 1717 because the lawsuit had since been refiled and remained pending in the proper forum].)

As discussed below, we reject Velaro's contentions as unsupported by the authorities on which they rely.

As an initial matter, we note that the Supreme Court in *DisputeSuite* considered only a claim for attorney fees made under section 1717. (See *DisputeSuite, supra*, 2 Cal.5th at p. 971 ["we conclude the trial court did not abuse its discretion in finding that defendants were not prevailing parties for purposes of section 1717"].) *DisputeSuite* contains no discussion or analysis of any claim for attorney fees pursuant to sections 1021, 1032, and 1033.5. Therefore, *DisputeSuite* is dispositive as to the section 1717 claim, but not as to the alternative claim for attorney fees, upon which the trial court ultimately relied here.

Contrary to Velaro's assertion, *Sears* did not hold that section 1717 governs all attorney fee motions arising in the context of contract claims. There, the Court of Appeal addressed a limited question: "Can a party denied additional damages on his cross-complaint, and ordered to return part of a payment on

8

the complaint, be considered the 'prevailing party' entitled to attorney's fees pursuant to section 1717?" (*Sears*, *supra*, 60 Cal.App.4th at p. 1139.) The court answered this question affirmatively and concluded that "[a] party can fail to recover a net monetary judgment and yet prevail for purposes of collecting fees in an action founded in contract." (*Ibid.*)

In so doing, the appellate court rejected the plaintiff's contention that "the Code of Civil Procedure provides the only statutory basis permitting an award of attorney fees in th[e] case" before it. (*Sears*, *supra*, 60 Cal.App.4th at p. 1142.) After analyzing section 1717's legislative history, as well as section 1032, the court explained the relationship between these statutes as follows: "[S]ection 1717's definition of prevailing party depends upon an equitable determination of which party obtained 'a greater relief in the action' [citation] and permits the court to find no party prevailed. . . . [S]ection 1032 requires a prevailing party to be identified but also allows the court, in its discretion, to determine how the section may apply and, in those 'situations other than as specified,' [citation] to fix the amount of costs to be received or apportioned between the parties. Thus, section 1032 does not supplant or conflict with section 1717, but rather provides complementary discretion for the award of statutory costs, including fees where they may properly be considered as costs." (*Id.* at p. 1158.)

In short, based on the unique outcome in the trial court proceedings in question, the appellate court in *Sears* discerned no abuse of discretion in the trial court's award of attorney fees to the defendant under section 1717. (*Sears*, *supra*, 60 Cal.App.4th at pp. 1139, 1143, 1159.) The *Sears* court did not hold

section 1717 applies to all fee motions arising from contract claims.

We acknowledge that, as Velaro observes, the *Sears* court made the following remark while harmonizing sections 1717 and 1032: "Section 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract." (*Sears*, *supra*, 60 Cal.App.4th at p. 1157.) But "[a]n appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) Accordingly, considering the facts, the specific question considered, and the conclusions reached in *Sears*, we conclude it does not—as Velaro contends—"h[o]ld that all motions for attorneys' fees arising from contract claims are governed by the definition of 'prevailing party' set forth in" section 1717.

Nor would such a holding be consistent with other relevant cases. In *Maynard*, plaintiff Catherine Maynard prevailed on her negligence claim against broker BTI, but the trial court found for BTI on all other claims, including contract causes of action. The trial court awarded attorney fees to Maynard as the prevailing party with a " 'net judgment against BTI.' " (*Maynard*, *supra*, 216 Cal.App.4th at p. 989.)

The Court of Appeal affirmed, relying on the broad language of the attorney fee agreement in the contract, which authorized an award of attorney fees concerning "any dispute[.]" "If the contractual provision limits an award of attorney fees to the party who has prevailed on the contract, fees may be awarded only to that party, and [section 1717] is invoked." (*Maynard*, *supra*, 216 Cal.App.4th at p. 990.) On the other hand, where the contractual fee provision is broader, section 1717 is not

10

controlling. "While prevailing on the contract is alone significant if the attorney fee provision limits fee entitlement to the party prevailing on the contract claim, it is not controlling if the provision authorizes fees to the party prevailing in the resolution of the entire controversy." (*Maynard*, at p. 993.)

"An agreement to pay attorney fees to the prevailing party in an action not governed by [section 1717] or some other statute is controlled by the more general provisions found in the Code of Civil Procedure." (*Maynard*, *supra*, 216 Cal.App.4th at pp. 993–994.) Applying those "general provisions," the appellate court concluded that plaintiff was the prevailing party pursuant to section 1032, subdivision (a)(4) because she obtained a net recovery in the action.

Thus, neither *Sears* nor *Maynard* support Velaro's assertion that section 1717 is the exclusive mechanism for analyzing all motions for attorney fees arising from contract claims. We likewise reject Velaro's contention that sections 1021 and 1033.5 demonstrate section 1717's unequivocal application to all fee motions arising in contract cases.

Section 1021 states: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." (*Ibid*.) As noted above, the statute's first clause codifies the American rule and permits parties to contract out of it. (§ 1021; *Mountain Air*, *supra*, 3 Cal.5th at p. 751.) The statute's second clause, read in context with the first, provides that regardless of how attorney fees are allocated, parties are entitled to their costs as set forth in the subsequent statutory

11

provisions.  (§ 1021.)  Section 1033.5 clarifies that attorney fees authorized by contract, statute, or law, including fees awarded under section 1717, are recoverable as costs, rather than damages.  (§ 1033.5, subds. (a)(10), (c)(5)(B); *Sears*, *supra*, 60 Cal.App.4th at p. 1150 [Legislature added section 1033.5 to confirm attorney fees awarded under a contract "must be claimed as costs" rather than "treated as damages"].)  Nothing in the unambiguous language of these statutes, nor the caselaw explaining their respective purposes, demonstrates "[s]ection 1717 applies to all fee motions arising from contract claims, regardless of which code section the motion is filed under[,]" as Velaro contends.

Similarly, *Exxess* does not support Velaro's position that no matter the language of the attorney fee provision, parties cannot avoid section 1717's application.  *Exxess* stemmed from litigation involving the parties to a commercial lease and their dual-agent broker.  (*Exxess*, *supra*, 64 Cal.App.4th at pp. 702–703.)  Ultimately, the lessor dismissed its complaint against the lessee and, per a settlement agreement, the lessee dismissed its cross-complaint against the lessor and the broker.  (*Id*. at pp. 703–704.)  Thereafter, the broker successfully moved for an award of attorney fees.  (*Id*. at p. 705.)

The Court of Appeal reversed the fee award.  (*Exxess*, *supra*, 64 Cal.App.4th at pp. 702, 716.)  In support of its holding, it first observed section 1717 governed the broker's fee request as to the lessee's declaratory relief claim, reasoning the claim was " 'on the contract' for purposes of section 1717" because the lessee "requested that the trial court determine the parties' rights and duties under the lease." (*Exxess*, at p. 707.)  The court then acknowledged that in contrast to section 1717, subdivision (b)(2),

12

which states there is no prevailing party in cases dismissed by way of settlement, the lease broadly defined the term " 'prevailing party' " to "contemplate[ ] an award of attorneys' fees to a cross-defendant who is dismissed as a result of a settlement." (*Exxess*, at p. 707.) But, the court explained, section 1717's "definition of 'prevailing party' . . . is mandatory and cannot be altered or avoided by contract." (*Exxess*, at p. 707.) Thus, the court reasoned, the lease provisions "conflict[ing] with the 'prevailing party' definition under section 1717 are void" and, therefore, "despite the language of the lease, no attorneys' fees [could] be awarded with respect to the [lessee's] claim for declaratory relief." (*Id.* at pp. 707–708, fn. omitted.)

In other words, the appellate court in *Exxess* held that where section 1717 applies, parties cannot circumvent the statute, including its definitions and other restrictions on entitlement to attorney fees thereunder, by contractually agreeing to contrary provisions. (*Exxess*, *supra*, 64 Cal.App.4th at pp. 707–708.) But as noted above, "section 1717 has a limited application" and "covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1342; § 1717, subd. (a).)

The attorney fee provision in *Exxess* tracked section 1717's language and fell squarely within its purview. It stated, in relevant part: " 'If any Party or Broker brings *an action or proceeding to enforce the terms hereof or declare rights hereunder*, the Prevailing Party . . . or Broker in any such proceeding action, or appeal thereon shall be entitled to reasonable attorney's fees.' " (*Exxess*, *supra*, 64 Cal.App.4th at pp. 702–703, italics added.)

13

By contrast, the fee provision here does more than award attorney fees to the party prevailing in an action seeking to enforce the Live Chat Agreement.  Specifically, the Live Chat Agreement broadly states:  " 'The prevailing party in *any dispute or proceeding arising hereunder* shall be entitled to recover its costs and expenses incurred therein (including reasonable attorneys' fees and expenses).' "  (Italics added.)  *Exxess* is inapposite and does not assist Velaro in demonstrating reversible error.

The analysis in *Thompson v. Miller* (2003) 112 Cal.App.4th 327 (*Thompson*) is more instructive.  In *Thompson*, plaintiff shareholders entered into a Share Purchase Agreement with defendant Miller containing the following attorney fee clause:  " 'The prevailing party in any dispute under this Agreement shall be entitled to reasonable attorneys fees incurred in such dispute.' "  (*Id*. at p. 333.)  Plaintiffs filed suit against Miller alleging breach of fiduciary duty, fraud, and elder abuse.  (*Id.* at p. 332.)  At trial, Miller pointed to language in the Share Purchase Agreement confirming that plaintiffs were not relying on Miller's representations as a defense to plaintiff's claims.  The jury returned a verdict for defendant Miller.  (*Id.* at p. 329.)

After trial, Miller moved for attorney fees, and the trial court denied the motion, relying on *Exxess* and finding that the attorney fee provision was not "broad enough to encompass plaintiffs' tort claim." (*Thompson, supra,* 112 Cal.App.4th at p. 334.)  The Court of Appeal reversed, noting the difference between the language in *Exxess* ("an 'action' to enforce the contract") and the language in the Share Purchase Agreement ("a 'dispute under' the agreements").  (*Thompson,* at p. 335, italics omitted.)  "A major difference between the two provisions

14

is the term 'dispute' instead of 'action.'  Another difference is *Exxess Electronixx* dealt with an action to enforce the terms of a contract; we deal with a dispute 'under' a contract."  (*Ibid*.)

"While 'dispute' includes a conflict giving rise to an action, it is not necessarily limited to such a conflict.  As a matter of plain language, whether plaintiffs' tort claims are defeated by their statements in the agreements that they did not rely on Miller's representations is a dispute—that is, a conflict or controversy—under the Share Purchase Agreements . . . .  Any conflict concerning the effect of the agreements gives rise to a right to an attorney fees award by the prevailing party." (*Thompson, supra*, 112 Cal.App.4th at p. 337.)

Here, similar to the broad clauses in *Maynard* and *Thompson*, the attorney fee clause applies to "any dispute or proceeding arising hereunder."  This provision is broad enough to encompass the dispute between Velaro and LG regarding the proper forum for litigation, as the trial court correctly found.

In sum, for the reasons discussed above, Velaro has not demonstrated that section 1717 governs all motions concerning contractual attorney fee provisions.  Nor has it shown that section 1717 applies on the facts of this case.  We therefore reject Velaro's contention that reversal is required because LG was not the "party prevailing on the contract" under section 1717, subdivision (b).

### B.    Affirmance of LG's Attorney Fee Award Will Not Lead to Inconsistent or Absurd Results

Next, although not entirely clear, Velaro appears to assert that, if upheld on appeal, the attorney fee award in this case will pave the way for "inconsistent and absurd results."  Endeavoring to illustrate its point in the context of this case, Velaro notes it

15

filed a new action in Alabama in April 2023² and asserts: "If [Velaro] ultimately prevails on its claims in Alabama, the trial court there must consider whether [Velaro] is the 'prevailing party' under . . . [section] 1717. When doing so, that trial court will also have to decide whether to award [Velaro] its fees for the very same motion to dismiss and attorney fee motion that the underlying trial [*sic*] awarded to [LG]." Further, in its reply brief, Velaro asserts that it ultimately prevailed on the merits in Alabama.

We are not persuaded by Velaro's argument for two reasons. First, it incorrectly treats the Alabama action as a continuation of the underlying case. Although the Alabama case concerns the same claims and allegations set forth in Velaro's FAC, the two matters are separate and distinct, with the underlying case having come to a close upon entry of the judgment of dismissal in LG's favor.

Second, Velaro assumes the parties' future disputes over attorney fees will require application of section 1717. Absent any explanation grounded in law or the record on Velaro's part, we do not see why California law will govern the parties' entitlement to fees in a case litigated in Alabama under Alabama law as required under the Live Chat Agreement.

---

² Velaro's December 26, 2024 request for judicial notice of the Alabama complaint (filed on April 20, 2023) is hereby granted. Velaro's August 6, 2025 and December 18, 2025 requests for judicial notice of documents filed in the Alabama case during the pendency of this appeal are denied as irrelevant.

Finally, we note Velaro's concern that if affirmed, the fee award in this case will pave the way for "competing fee motions, one by the party who purports to have prevailed 'on balance' under Section 1717, and the other by the party who prevailed under the putative brightline standard of Section 1032(a)(4) argued by [LG]. Permitting competing fee motions will inevitably lead to inconsistent rulings between trial courts, where both parties could claim fee awards for the same litigation."

This argument misunderstands the nature of LG's fee motion as well as the nuanced nature of the trial court's ruling. Here, LG moved for attorney fees primarily under sections 1021, 1032, and 1033.5 and only sought fees under section 1717 in the alternative. In granting LG's motion, the trial court recognized LG could not recover attorney fees based on its alternative theory, but found LG entitled to its fees "incurred in litigating the motion to dismiss only" per its primary theory. The court correctly arrived at this conclusion because, as discussed above, sections 1021 and 1032—rather than section 1717—apply here. The trial court did not "face competing fee motions."[3]

---

[3] Although "competing fee motions" were not at issue in this case, we note that the trial courts routinely face such motions at the conclusion of litigation. (See, e.g., *Maynard, supra*, 216 Cal.App.4th at p. 989 [after trial court's decision on the merits, both plaintiff and defendant sought attorney fees, each alleging it was the prevailing party].)

## DISPOSITION

The order granting LG's motion for attorney fees is affirmed.  LG shall recover its costs on appeal.


                                    UZCATEGUI, J.*

We Concur:



STRATTON, P. J.



WILEY, J.

---

*        Judge of the Los Angeles County Superior Court, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.